BANK OF COMMERCE & TRUST CO. *et al. v.* SENTER *et al.*

(*Nashville.*   December Term, 1923.)

1. **CONSTITUTIONAL LAW.**   Legislature has unlimited legislative power except as restrained by Constitutions.

The legislature has unlimited power to act in its own sphere, except so far as restrained by the Constitutions of the State and of the United States.   (*Post, p.* 576.)

Acts cited and construed:   Acts 1923, ch. 21.

Cases cited and approved:   Henley v. State, 98 Tenn., 681.

Constitution cited and construed:   Art. 2, secs. 1, 2, 28;   Art. 1, sec. 8;   Art. 11, sec. 8.

2. **TAXATION.**   Measure and subjects discretionary with legislature.

Under Constitution, article 2, section 3, the right to select the measure and subjects of taxation lies within the discretion of the legislature, subject to definite constitutional limitations which may not be overstepped.   (*Post, pp.* 576-578.)

3. **CONSTITUTIONAL LAW.**   Every reasonable doubt resolved in favor of act.

Every reasonable doubt must be resolved in favor of a statute (*Post, pp.* 576-578.)

Cases cited and approved:   Henley v. State, 98 Tenn., 680;   State v. Alabama Fuel Co., 188 Ala., 487;   Phillips v. Lewis, 3 Tenn. Cas., 230;   Memphis v. Memphis City Bank, 91 Tenn., 588;   Reelfoot Lake Levee Dist. v. Dawson, 97 Tenn., 151;   Turnpike Cases, 92 Tenn., 372;   Kurth v. State, 86 Tenn., 135;   Jenkins v. Ewin, 55 Tenn., 456;   Wiltse v. State, 55 Tenn., 544;   State v. Schlier, 50 Tenn., 281;   Columbia v. Guest, 40 Tenn., 414;   Robertson v. Hennegar, 37 Tenn., 258;   French v. Baker, 36 Tenn., 193;   Mabry v. Tarver, 20 Tenn., 94.

Case cited and distinguished: Railroad Co. v. Harris, 99 Tenn., 701.

4. **TAXATION.** ''Excise tax'' Imposed on corporations held a ''privilege tax'' within Constitution, and therefore not violation of provision requiring equality and uniformity in direct taxation; ''equal to.''

Acts 1923, chapter 21, imposing an annual "excise tax" on corporations "equal to" three per cent. of the net earnings for their preceding fiscal year, *held* not violative of Constitution, article 2, section 28, requiring equality and uniformity in taxation on property; such tax not being a direct tax on property, but a privilege tax permitted by such provision' of the Constitution, the term "excise tax" being synonymous with the term "privilege tax," and the words "equal to" meaning "no more than" and "no less than" and not "on." (*Post, pp.* 578-582.)

Cases cited and approved: Pollock v. Farmers' Loan & Tr. Co., 157 U. S., 429; Ohio Tax Cases, 232 U. S., 592; Manufacturing Co. v. Falls, 90 Tenn., 469; Palmer v. Express Co., 129 Tenn., 156; Telephone & Telegraph Co. v. Hartley, 127 Tenn., 201; Knox v. Emerson, 123 Tenn., 409; Atlas Powder Co. v. Goodloe, 131 Tenn., 507.

Case cited and distinguished: Flint v. Stone Tracy Co., 220 U. S., 145.

Constitution cited and construed: Art. 1, sec. 9, par. 4.

5. **TAXATION.** Term ''privileges,'' within constitutional provision as to taxation, construed.

The term "privileges," within Constitution, article 2, section 28, authorizing the legislature "to tax merchants, peddlers and privileges," refers to the activity or occupation, and not to the character of the person or entity that pursues the occupation. (*Post, pp.* 582, 583.)

6. **TAXATION.** ''Excise tax'' is indirect or privilege tax.

An "excise tax" is an indirect or privilege tax. (*Post, pp.* 582, 583.)

Cases cited and approved: Ohio Tax Cases, 232 U. S., 592; Baltic Mining Co. v. Mass., 231 U. S., 68; Flint v. Stone Tracy Co., 220 U. S., 151; Jenkins v. Ewen, 55 Tenn., 484.

Bank of Commerce & Trust Co. v. Senter.

7. **CONSTITUTIONAL LAW.** Interpretation avoiding unconstitutionality adopted if words used are open to two meanings.

If an act is open to two meanings, that interpretation should be adopted which will sustain it. (*Post, pp.* 583-585.)

Cases cited and approved: Anderson v. Forty-Two Broadway Co., 239 U. S., 72; Spreckles Sugar Refining Co. v. McClain, 192 U. S., 410; Ohio River & W. Railway Co. v. Dittey, 232 U. S., 578; Equitable Life Assurance Society v. Pennsylvania, 238 U. S., 145; Kansas City Railway Co. v. Botkin, 240 U. S., 227; Mutual Reserve Fund Life Ass'n v. Augusta, 109 Ga., 73; Powder Co. v. Goodloe, 131 Tenn., 507; Turnpike Cases, 92 Tenn., 369; Columbia v. Guest, 40 Tenn., 414; State v. Alston, 94 Tenn., 681; Dun v. Cullen, 81 Tenn., 202.

8. **TAXATION.** Legislature may make reasonable classification for purpose of indirect taxation.

The legislature may distinguish, select, and classify objects of legislation with reference to indirect taxation, provided the classification rests upon reasonable and substantial distinctions growing out of prevalent and substantial conditions, or the diverse nature of the business carried on. (*Post, pp.* 586, 587.)

Cases cited and approved: Ogilvie v. Hailey, 141 Tenn., 396; State v. Schlier, 50 Tenn., 284; Fulgum v. Mayor, etc., 76 Tenn., 639.

Case cited and distinguished: Flint v. Stone Tracy Co., 220 U. S., 158.

9. **TAXATION.** Statute imposing excise tax on corporations held to make a reasonable and not an arbitrary classification.

Acts 1923, chapter 21, imposing an excise tax on corporations measured by net earnings, *held* not unconstitutional as against contention that it arbitrarily taxes corporations to the exclusion of partnerships and individuals, in competing activities; the classification being reasonable and not arbitrary. (*Post, pp.* 587, 588.)

10. **TAXATION.** Statute imposing excise tax on foreign and domestic corporations measured by net earnings of business done within State excluding earnings from interstate commerce held valid.

Bank of Commerce & Trust Co. v. Senter.

Acts 1923, chapter 21, imposing an excise tax on foreign and domestic corporations and joint-stock associations equal to a certain per cent. of the net earnings "arising from business done wholly within the State excluding earnings from interstate commerce," *held* not void as against contention that classification is arbitrary and unreasonable because earnings derived from interstate commerce are not segregated. (*Post, pp.* 588, 589.)

Cases cited and approved: Equitable Life Society v. Penn., 238 U. S., 146; Mutual Reserve Fund v. Augusta, 109 Ga., 73; Underwood Typewriter Co. v. Chamberlain, 254 U. S., 113.

11. **TAXATION.** Statute imposing excise tax on corporations held not void as against contention that it arbitrarily favors insurance companies and banks.

Acts 1923, chapter 21, imposing an excise tax on corporations measured by net profits, *held* not void because arbitrarily favorable to insurance companies and banks, since the State for the purpose of taxation may place banks or banks of a particular class, and insurance companies or a particular class of insurance companies, in separate classes. (*Post, p.* 589.)

12. **TAXATION.** Statute imposing excise tax on corporations held not void because discriminatory.

Acts 1923, chapter 21, imposing an excise tax on corporations equal to a certain per cent. of the net earnings of the corporation during the preceding fiscal year, *held* not void as against contention that it discriminates in favor of those corporations which have not been in existence for a fiscal year and those that earn no profits. (*Post, p.* 589.)

13. **CONSTITUTIONAL LAW.** Taxation. Equal protection clause not violated if classification based on reason, though the reason is a poor one.

A tax statute is not violative of the equal protection clause if the classification is based on a reason, even though such reason be a poor one. (*Post, pp.* 589-592.)

Bank of Commerce & Trust Co. v. Senter.

Cases cited and approved: Bells Gap Ry. Co. v. Pennsylvania, 134 U. S., 232; State v. Guilbert, 70 Ohio St., 229; Kentucky Railroad Tax Cases, 115 U. S., 321; Magoun v. Illinois Trust & Savings Bank, 170 U. S., 283; Southwestern Oil Co. v. Texas, 217 U. S., 114.

Case cited and distinguished: Ohio River & W. R. Co. v. Dittey, 232 U. S., 590.

14. **TAXATION.** Statute imposing excise tax on corporations held not to delegate legislative power to commissioner of finance and taxation.

Acts 1923, chapter 21, imposing an excise tax on corporations equal to a certain per cent. of the "net earnings" without defining the term "net earnings," *held* not void as against contention that it delegates to the commissioner of finance and taxation the legislative power of determining the measure of the tax, since the term "net earnings," in the absence of a statutory definition, must be given its usual and ordinary meaning. (*Post. pp.* 592, 593.)

15. **TAXATION.** Power of determining measure of tax is legislative function.

The power of determining the measure of a tax is a legislative function. (*Post, pp.* 592, 593.)

Case cited and approved: House v. Creveling, 147 Tenn., 597; Woods v. State, 130 Tenn., 100.

16. **TAXATION.** Remedy of corporations complaining of excise tax, stated.

Corporations complaining of determination by commissioner of finance and taxation as to amount of excise tax payable under Acts 1923, chapter 21, were not required to review determination by certiorari in the circuit court, but could pay the tax and recover amount paid to the extent of the illegal exaction, under Shannon's Code, section 1059 et seq. (*Post, pp.* 593-596.)

Acts cited and construed: Acts 1923, ch. 21; Acts 1873, ch. 44.

Cases cited and approved: Railroad v Bate, 80 Tenn., 573; State v. Taxing Board, 84 Tenn., 240; Briscoe v. McMillan, 117 Tenn., 115;

Smoky Mohntain v. Lattimore, 119 Tenn., 620; Railroad v. Bate, 80 Tenn., 577; Railroad v. State, 55 Tenn., 808; Ward v. Alsup, 100 Tenn., 745; Phillips v. Lewis, 3 Tenn. Cas., 230; Powder Co. v. Goodloe, 131 Tenn., 499; Western Oil Refining Co. v. Dalton, 131 Tenn., 329; Bright v. Halloman, 75 Tenn., 309; Knoxville v. Harth, 105 Tenn., 436.

Code cited and construed: Sec. 1059 (S.).

---

## FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —Hon. John R. Aust and James B. Newman, Chancellors.

W. E. Nowell, Jr., Bass, Berry & Sims, W. P. Cooper, Thos. H. Malone and Wm. J. Wade, for appellants.

F. M. Thompson, W. L. Granbery, H. N. Leech and Chas. C. Trabue, for appellees.

Mr. Justice Cook delivered the opinion of the Court.

Bank of Commerce & Trust Company, American Trust & Banking Company, and Cain-Sloan & Co. are corporations organized under the laws of Tennessee. The American Snuff Company is a corporation organized under the laws of New Jersey, authorized to do business in this state. All are engaged in business in Tennessee, and each paid the excise tax, imposed by chapter 21, Public Acts of 1923, under protest, and sue to recover it.

They allege in their bills that the act is unconstitutional; if held valid, that they were denied credits and deductions authorized by the act, and illegally charged with certain items of tax by the commissioner of finance and taxation. Upon these allegations they seek recovery of all or of such part of the tax as was illegally exacted. The actions were brought by each complainant against the commissioner of finance and taxation, and the comptroller of the treasury of the state, and as they ask for a decree declaratory of their rights under the Declaratory Judgments Law, the Attorney General is joined as a defendant.

By consent the causes were consolidated and heard before Chancellors Newman and Aust on demurrers filed in each case. Defendants in their demurrer challenge the sufficiency of the bill. They maintain that the Excise Tax Law is valid, deny the right to declaratory relief, and a recovery of any part of the tax paid. The chancellors being of opinion that the statute, chapter 21, Acts of 1923, is valid, sustained the first ground of demurrer, and overruled the second and third which relate to the prayer for declaratory relief, and a recovery of the tax or any part of it.

The defendants, and complainants, other than American Snuff Company, appealed from so much of the decree as was adverse to their contention. The American Snuff Company did not appeal, but maintains that the action of the chancellors in overruling the second and third grounds of demurrer should be affirmed.

Assignments of error by complainants question the constitutionality of chapter 21 of the Acts of 1923: (1) Be-

cause it violates article 2, section 28, of the constitution; (2) because it contravenes article 1, section 8, and article 11, section 8, of the constitution; (3) because it delegates legislative power to the commissioner of finance and taxation in violation of article 2, sections 1 and 2, of the constitution of Tennessee; and (4) because the act is violative of the Fourteenth Amendment to the federal constitution.

It is insisted under the propositions which relate to and amplify the assignments of error that the act imposes a direct tax without observing the requirements of equality and uniformity as provided in article 2, section 28, and that it violates other constitutional provisions. If it violates the fundamental law as insisted by the complainants, it would be the duty of the court to arrest the enforcement of the act; otherwise it must be sustained. The taxing power is essentially legislative, and by article 2, section 3, of the constitution, this power is conferred exclusively upon the legislature. The legislature has unlimited power to act in its own sphere, except so far as restrained by the constitution of the state and of the United States. *Henley* v. *State,* 98 Tenn., 681, 41 S. W., 352, 1104, 39 L. R. A., 126.

Subject to definite constitutional limitations which may not be overstepped, the right to select the measure and subjects of taxation lies within the discretion of the legislature, and in passing upon the validity of legislative enactments, as we are here called upon to do, courts do not assume that the Legislature intentionally passed an invalid act, because legislators, as well as judges, are bound by the law, and it is understood that they weighed the constitutionality of the act while it was before them and held

it valid. Wherefore it is the rule that every reasonable doubt must be resolved in favor of the act, and the courts cannot adjudge it invalid unless the 'violation of the constitution is in their judgment clear, complete, and unmistakable. *Henley* v. *State,* 98 Tenn., 680, 41 S. W., 352, 1104, 39 L. R. A., 126; *State* v. *Alabama Fuel Co.,* 188 Ala., 487, 66 South., 169, L. R. A. 1915A, 185, Ann. Cas. 1916E., 752; Cooley, Const. Lim. (6th Ed.), 218; Black, Const. Law, section 391. These rules of construction must be observed as we proceed to consider the complainants' assignments of error.

Section 28 of article 2 of the constitution definitely indicates two objects and two modes of taxation. The object of the first class is property taxed equally and uniformly upon its value, and the object of the second is privileges classified and taxed according to the sound discretion of the legislature. Taxation of the privilege is upon the occupation or activity carried on amid the social, economic, and industrial environment, under protection of the state. *Phillips* v. *Lewis,* 3 Tenn. Cas., 230. Without the opportunity and protection afforded by the State, none of those classed and taxed as privileges could exist; every element that enters into the composition of a civilized state supplies them sustenance and strength; and it is often true that the visible property attendant upon the exercise of the privilege is inconsequential as compared to the earnings or profits flowing from the licensed activity or occupation.

Excising the result of an occupation or activity in the modern State may be likened to the ancient custom of

huntsmen sharing with the dispensing gods of bounty a small portion of the captured game.

In *Railroad Co.* v. *Harris,* 99 Tenn., 701, 43 S. W., 119, 53 L. R. A., 921, the court said:

"The constitution of the State (article II, section 28) recognizes only two general kinds of taxation—*ad valorem* and privilege. These cover the whole domain of taxation, and beyond these the legislature may not go in the imposition of taxes. *Memphis* v. *Memphis City Bank,* 91 Tenn., 588; *Reelfoot Lake Levee District* v. *Dawson,* 97 Tenn., 151, 168, 169. In respect of the subjects of the latter kind the legislative discretion has a very comprehensive range. At the least, any occupation, business, employment, or the like affecting the public, may be classed and taxed as a privilege. *Turnpike Cases,* 92 Tenn., 372; *Kurth* v. *State,* 86 Tenn., 135; *Jenkins* v. *Ewin,* 8 Heisk., 456; *Wiltse* v. *State,* Ib., 544; *State* v. *Schlier,* 3 Heisk., 281; *Columbia* v. *Guest,* 3 Head, 414; *Robertson* v. *Hennegar,* 5 Sneed, 258; *French* v. *Baker,* 4 Sneed, 193; *Mabry* v. *Tarver,* 1 Hun., 94."

It is not open to controversy that the legislature could impose a privilege tax upon corporations and their occupations and activities, but admitting as much it is insisted by complainants that the term "excise" used to characterize the tax is insufficient to accomplish such purpose, because it may mean an income tax or a privilege tax. The case of *Pollock* v. *Farmers' Loan & Tr. Co.,* 157 U. S., 429, 15 Sup. Ct., 673, 39 L. Ed., 759, and Id., 158 U. S., 601, 15 Sup. Ct., 912, 30 L. Ed., 1108, is cited to sustain the insistence. This case presented the question of whether the tax upon the income from real estate and personal property was a direct tax within the meaning of article

1, section 9, par. 4, of the constitution of the United States. A distinction was recognized between taxes derived from ownership of property, which was held to be a direct tax as distinguished from the excise upon a particular privilege under article 1, section 8, of the constitution of the United States. In the language of Chief Justice FULLER in his opinion upon the first hearing, "an annual tax upon the annual value or annual user of real estate appears to us the same in substance as an annual tax on the real estate, which would be paid out of the rent or income," and the conclusion of that case was that such a tax was not an excise tax but a direct tax. The term "excise tax" was never applied to direct taxation. It is synonymous with "privilege tax," and the two are often used interchangeably. *Ohio Tax Cases,* 232 U. S., 592, 34 Sup. Ct., 372, 58 L. Ed., 737; Cooley on Taxation (3d Ed.), 31.

In 26 Ruling Case Law, p. 34, it is said:

"Excises, in their original sense, were something cut off from the price paid on a sale of goods, as a contribution to the support of government. The word has, however, come to have a broader meaning and includes every form of taxation which is not a burden laid directly upon persons or property; in other words, excise includes every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation. The obligation to pay an excise is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege or engaging in the occupation which is subject of the excise and the element of absolute and unavoidable demand is lacking."

In *Flint* v. *Stone Tracy Co.,* 220 U. S., 145, 31 Sup. Ct., 346, 55 L. Ed., 389, Ann. Cas. 1912B, 1312, it is said:

"While the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the act, nevertheless the declaration of the lawmaking power is entitled to much weight, and in this statute the intention is expressly declared to impose a special excise tax with respect to the carrying on or doing business by such corporation, joint-stock company or association, or insurance company. It is therefore apparent, giving all the words of the statute effect, that the tax is imposed not upon the franchises of the corporation irrespective of their use in business, nor upon the property of the corporation, but upon the doing of corporate or insurance business and with respect to the carrying on thereof, in a sum equivalent to one per centum upon the entire net income over and above $5,000 received from all sources during the year; that it, when imposed in this manner it is a tax upon the doing of business with the advantages which inhere in the peculiarities of corporate or joint-stock organizations of the character described. As the latter organizations share many benefits of corporate organization, it may be described generally as a tax upon the doing of business in a corporate capacity. In the case of the insurance companies the tax is imposed upon the transaction of such business by companies organized under the laws of the United States or any State or territory, as heretofore stated.

"This tax, it is expressly stated, is to be equivalent to one per centum of the entire net income over and above $5,000 received from all sources during the year—this is the measure of the tax explicity adopted by the statute. The income is not limited to such as is received from property used in the business, strictly speaking, but is expressly declared to be upon the entire net income above $5,000 from all sources excluding the amounts received as dividends on stock in other corporations, joint-stock companies or associations, or insurance companies also subject to the tax. In other words, the tax is imposed upon the doing of business of the character described, and the measure of the tax is to be the income, with the deduction stated, received not only from property used in business, but from every source."

Section 1 of the act in question provides:

"That all corporations and joint-stock associations organized under the laws of the State of Tennessee, other than those organized for general welfare and not for profit, and all corporations and joint-stock associations organized under the laws of any other state or country for profit and doing business in Tennessee, shall hereafter pay to the State comptroller annually an excise tax equal to three per centum of the net earnings for their preceding fiscal year of such corporations and joint-stock associations, arising from business done wholly within the State, excluding earnings arising from interstate commerce. Tennessee insurance companies shall pay on net earnings proportioned to premiums on policies on persons and property in this State."

Under well-known canons of construction, the court cannot adopt an assumption that would render an act invalid where an equally plausible assumption may be adopted which will sustain it.

"As said by the supreme court speaking through Mr. Justice CALDWELL, in *Manufacturing Co.* v. *Falls,* 90 Tenn., 469, 16 S. W. 1046: 'It is well to observe in the outset that all intendments are in favor of the constitutionality of an act of the legislature passed with the the forms and ceremony requisite to give it the force of law and that, where one construction will make a statute void on account of conflict with the constitution, and another would render it valid, the latter will be adopted by the courts, even though the former, at first view, be otherwise the more natural interpretation of the language used.'" *Palmer* v. *Express Co.,* 129 Tenn., 156, 165 S. W., 236; *Telephone & Telegraph* v. *Hartley,* 127 Tenn., 201, 154 S. W., 531; *Knox* v. *Emerson,* 123 Tenn., 409, 131 S. W., 972.

The legislature could not levy a direct tax upon the property or the income from property, but could levy a tax upon the occupation, activity or business as a corporation. *Atlas Powder Co.* v. *Goodloe,* 131 Tenn., 507, 175 S. W., 547.

The term "privilege," as used in article 2, section 28, of the constitution, refers to the activity or occupation and not to the character of the person or entity that pursues the occupation. Express companies, railroad companies, turnpike companies, and others carrying on business under powers conferred by charters from the State have been taxed from time to time upon the occupation. Such a tax was never imposed upon their property or upon

their income, nor upon the franchise which is an integral part of the corporate property, but it was always supposed to be a tax upon the occupation or activity. Whether the tax be characterized in the statute as a privilege tax or an excise tax is but a choice of synonymous words, for an excise tax is an indirect or privilege tax. 37 Cyc., 810, and cases cited under note 8; Ohio Tax Cases, 231 U. S., 592, 34 Sup. Ct., 372, 58 L. Ed., 737; Cooley on Taxation (3d Ed.), 31; Cooley, Const. Lim. (7th Ed.), 680; *Baltic Mining Co.* v. *Mass.*, 231 U. S., 68, 34 Sup. Ct., 15, 58 L. Ed., 127.

In *Flint* v. *Stone Tracy Co.*, 220 U. S., 151, 31 Sup. Ct., 342, 55 L. Ed., 389 Ann. Cas., 1912B, 1312, the court said the tax may be described as an excise upon the particular privilege of doing business in the corporate capacity; i. e., with the advantages that arise from the corporate or *quasi*-corporate organization. We think this properly characterizes the tax levied by the act in controversy.

In *Jenkins* v. *Ewen*, 8 Heisk., 484, the court said, in regard to a privilege tax upon merchants, that the legislature could assess a specific amount without regard to the capital, or the tax could be graduated according to the amount of capital; and such tax was regarded as a tax upon the occupation and not upon the goods.

It is said the words "equal to," as used in section 1 of the act, are synonymous with the word "on," and without determining the character of the tax declare a purpose to impose a direct tax on the incomes of corporations. Given their obvious meaning of "no more than" and "no less than," the words "equal to," express the intention of the legislature to fix a rate of exactly 3 per centum on

net incomes as the measure of the tax. If the words used were obscure and open to two meanings, that interpretation should be adopted which would avoid the effect of unconstitutionality. Black on Interpretation of Laws, 94.

In *Flint* v. *Stone Tracy Co.*, the court said a tax must be measured by some standard, and the right to select the measure devolved upon the legislative department, and that their selections would be valid unless constitutional limitations were overstepped.

In *Anderson* v. *Forty-Two Broadway Co.*, 239 U. S., 72, 36 Sup. Ct., 60 L. Ed., 152, the court sustained an excise upon the conduct of business in a corporate capacity measured by reference to the income.

In *Spreckels Sugar Refining Co.* v. *McClain*, 192 U. S., 410, 24 Sup. Ct., 376, 48 L. Ed., 496, the tax measured by a per centum of gross receipts.

In *Ohio River & W. Railway Co.* v. *Dittey*, 232 U. S., 578, 34 Sup. Ct., 372, 58 L. Ed., 737, the court sustained the Illinois tax on public utility corporations measured by gross earnings.

In *Equitable Life Assurance Society* v. *Pennsylvania*, 238 U. S., 145, 35 Sup. Ct., 829, 59 L. Ed., 1239, the State excise tax on insurance companies measured by gross earnings was sustained.

In *Kansas City Railway Co.* v. *Botkin*, 240 U. S., 227, 36 Sup. Ct., 261, 60 L. Ed., 617, the Kansas act imposing an excise tax on domestic corporations measured by paid-up capital stock was sustained.

In *Mutual Reserve Fund Life Ass'n* v. *Augusta*, 109 Ga., 73, 35 S. E., 71, a tax upon premium receipts of insurance companies was held an occupation tax and not a property tax.

It is not, however, necessary to go beyond our own cases in search of authority for the legislature to measure the tax by any reasonable standard. *Powder Co.* v. *Goodloe,* supra; *Turnpike Cases,* 92 Tenn., 369, 22 S. W., 75; *Columbia* v. *Guest,* 3 Head, 414; *State* v. *Alston,* 94 Tenn., 681, 30 S. W., 750, 28 L. R. A., 178; *Dun* v. *Cullen,* 13 Lea, 202.

These rules of statutory construction and the authorities referred to sustain the conclusion reached by the chancellors that the act imposes an excise tax, that is, a privilege tax, upon a class that embraces all domestic and foreign corporations or joint-stock associations organized for profit, and carrying on business within the State; that the measure of the annual tax is a sum equal to 3 per centum of the net earnings for the preceding fiscal year coming from business done wholly within the State, excluding earnings from interstate commerce; that corporations or associations not doing business in the State, and those that derive no net earnings from business, are not subject to the tax, whether they be foreign or domestic corporations; that the act is valid unless some other constitutional limitation has been overstepped.

It is urged under the third assignment of error that the act (1) arbitrarily taxes corporations to the exclusion of partnerships and individuals in competing activities; (2) allows deductions to corporations engaged in interstate commerce to the exclusion of those doing business wholly within the state; (3) taxes corporations whose activities produce net earnings, and exempts those which make no profit; (4) measures the tax on insurance companies by a scale different from other corporations; (5) taxes all members of the class without regard to the privilege enjoyed.

These propositions direct attention to the authority of the legislature to select and classify the subject of indirect taxation. It is well settled that the legislature may distinguish, select, and classify objects of legislation with reference to such taxes, provided the classification rests upon reasonable and substantial distinctions growing out of prevalent economic or social conditions, or the diverse nature of the business carried on.

"The later decisions of this court and of the federal supreme court have conceded to the legislature a very wide range of discretion in the matter of classification in police statutes and revenue statutes. The idea is that, if any possible reason can be conceived to justify the classification, it will be upheld." *Ogilvie* v. *Hailey,* 141 Tenn., 396, 210 S. W., 647, and cases cited.

In *State* v. *Schlier,* 3 Heisk., 284, 285, the court said the legislature might classify parties engaged in business and tax all the class alike, or might graduate the tax applicable to each class.

In *Fulgum* v. *Mayor, etc.,* 8 Lea, 639, it was said the classification of hotels having 10 rooms or more to the exclusion of hotels with less than 10 rooms was not unreasonable.

In *Railroad* v. *Harris,* supra, the court sustained an act which imposed a privilege tax upon railroads not taxed *ad valorem,* and held that such classification was not unreasonable, although but two roads fell within the class.

The supreme court of the United States, in *Flint* v. *Stone Tracy Co.,* 220 U. S., 158, 31 Sup. Ct., 352, 55 L. Ed., 389, Ann. Cas., 1912B, 1312, said:

"In levying excise taxes the most ample authority has been recognized from the beginning to select some and

omit other possible subjects of taxation, to select one calling and omit another, to tax one class of property and to forbear to tax another. . . . Many instances might be given where this court has sustained the right of a State to select subjects of taxation, although as to them the Fourteenth Amendment imposes a limitation upon State legislatures, requiring that no person shall be denied the equal protection of the laws."

This act embraces and classifies "all corporations and joint-stock associations organized under the laws of Tennessee other than those organized for general welfare and not for profit, and all corporations and joint-stock associations organized under the laws of any other state or country for profit and doing business in Tennessee." None are arbitrarily included or excluded. Some may naturally drop out, while others fall into the class contemplated by the act, but all of the class doing business in the State are subject to the tax.

In *Flint* v. *Stone Tracy Co.,* supra, the court said:

"The thing taxed is not the mere dealing in merchandise, in which the actual transactions may be the same, whether conducted by individuals or corporations, but the tax is laid upon the privileges which exist in conducting business with the advantages which inhere in the corporate capacity of those taxed, and which are not enjoyed by private firms or individuals. These advantages are obvious, and have led to the formation of such companies in nearly all branches of trade."

Some of these advantages are:

"The continuity of the business, without interruption by death or dissolution, the transfer of property interests

by the disposition of shares of stock, the advantages of business controlled and managed by corporate directors, the general absence of individual liability, these and other things inhere in the advantages of business thus conducted, which do not exist when the same business is conducted by private individuals or partnerships. It is this distinctive privilege which is the subject of taxation, not the mere buying or selling or handling of goods which may be the same, whether done by corporations or individuals."

It is said the classification is arbitrary and unreasonable, because profits derived from interstate commerce are not segregated. The tax laid upon the privilege of conducting business as a corporation within the State is graduated upon the result of the exercise of the privilege. In determining whether the classification is reasonable the court must consider the act from the standpoint of the legislature, confronted with the complex question of distinguishing between net earnings which were the legitimate subject of taxation and those derived from interstate commerce; and of determining where to begin and end so as to avoid arbitrary classification.

The activities of corporate organizations are not always confined to the State from which they derive their powers. We can suppose a Tennessee corporation with one plant in the State and similar ones operating in other states, also a foreign corporation with one plant in this State and similar ones operating in many other States. All the profits derived from business done by domestic corporations could have been included, as the measure of the tax under a carefully prepared plan for segregating net earnings, but all the earnings of the domesticated foreign cor-

porations working under precisely the same conditions could not have been segregated. Measuring the tax by net earnings from business done in the State is not discriminatory, because it excludes from the measure those earnings of foreign corporations, which cannot be taxed, and then classifies all corporations both domestic and foreign on the same basis.

The tax is upon the privilege as actually used by all within the class. The State could have measured the tax of domestic corporations by all its net earnings, including interstate business, but it could not have placed domestic and foreign corporations engaged in business under similar circumstances, in the same class. *Equitable Life Society* v. *Penn.*, 238 U. S., 146, 35 Sup. Ct., 289, 59 L. Ed., 1239; *Mutual Reserve Fund* v. *Augusta*, 109 Ga., 73, 35 S. E., 71; *Underwood Typewriter Co.* v. *Chamberlain*, 254 U. S., 41 Sup. Ct., 45, 65 L. Ed., 165.

It was a matter which addressed itself to the legislature. If there is doubt of whether the exercise of discretion was reasonable, it must be resolved in favor of the act. 12 C. J., 1152.

It is urged that the classification arbitrarily favors insurance companies that pay only upon net earnings proportioned to premiums on policies on persons and property in this State, and discriminates in favor of banks and insurance companies because they are allowed to deduct certain special taxes and charges not imposed upon other corporations; and that it discriminates in favor of those corporations that have not been in existence for a fiscal year, and those that earn no profits.

As stated, the matter of classification is one of legisla-

tive discretion. The courts will not declare a tax statute void as a violation of the equal protection guaranty so long as the classification or selection is based on a reason, even though the reason is a poor one. For the purpose of taxation, the State may, as is done by this act, place in separate classes banks, banks of a particular class, insurance companies, or a particular class of insurance companies. 37 Cyc., 741, 742, 12 C. J., 1152.

Neither the Fourteenth Amendment, nor the State constitution, forbid classification. The State may select, distinguish, and classify the subjects of taxation, which are within its jurisdiction, and its power to do so necessarily comprehends a wide range of discretion. 7 Fletcher's Cyc. Corp., chapter 59, par. 4579, and cases cited. The State may adjust its system of taxation in all proper and reasonable ways. *Bells Gap Ry. Co.* v. *Pennsylvania,* 134 U. S., 232, 10 Sup. Ct., 533, 33 L. Ed., 892; *Railroad* v. *Harris,* supra.

Being directly in point, we quote from the opinion of the United States supreme court in *Ohio River & Western R. Co.* v. *Dittey,* 232 U. S., 590, 34 Sup. Ct., 375, 58 L. Ed., 737, a case involving the Ohio excise tax on public utility corporations measured by their gross earnings:

"It is contended that the act arbitrarily discriminates against plaintiffs in error and other railroad companies in that (a) it does not include all other public utilities carrying on business within the State; those omitted, as is said, being grain elevators, stockyards, ferries, bridge companies, and innkeepers; and (b) the law does not operate uniformly among the utilities that are taxed, since, on electric light, gas, natural gas, water works, telephone, messenger or signal, union depot, heating, coaling,

and water transportation companies, the tax amounts to 1.2 per cent. of gross intrastate receipts, as to suburban and interurban railroads, it is fixed at 1.2 per cent. of gross intrastate earnings, and on express and telegraph companies, it is 2 per cent.; while on railroads, including plaintiffs in error, it is 4 per cent. of such earnings, and the same on pipe line companies.

"Both of these contentions turn upon the familiar question of classification, concerning which so much has been written. We agree with the court below that whether the question be considered in view of the uniformity and equality provisions of the Ohio constitution, or of the 'equal protection' clause of the Fourteenth Amendment, the result is the same; it cannot be said that the classification rests upon no reasonable and sufficient basis of distinction. *State* v. *Guilbert,* 70· Ohio St., 229, 253; *Kentucky Railroad Tax Cases,* 115 U. S., 321, 337; *Bell's Gap Railroad Co.* v. *Pennsylvania,* 134 U. S., 232, 237; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S., 283, 293; *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114, 121, et seq."

The objection that the act is discriminatory because of the deduction of other privilege taxes from the excise tax requires no extended discussion. Section 2 provides:

"That any corporation or joint-stock association paying the tax hereinabove imposed, shall be entitled to a credit upon the tax herein imposed for the amount paid, in the preceding twelve months prior to July 1st of the year in which this tax becomes due, to the secretary of state under the terms of chapter 434, Acts of 1907, relating to corporations filing certain information with the secretary of State; also to a credit for the amount so paid under chapter 20, Public Acts of 1913, relating to regulation of State

banks; insurance companies shall be entitled to a credit for all amounts so paid during the preceding twelve months under section 6, chapter 134, Acts of 1919, known as the General Revenue Bill, and any similar act or acts hereafter enacted; and also under section 18, chapter 131, of the Public Acts of 1915, creating the office of fire prevention commissioner, etc.; and corporations or joint-stock associations engaged in mercantile pursuits, and paying the merchants privilege tax to the State of Tennessee, shall be entitled to a credit for the amount so paid during such preceding twelve months; and all other corporations and joint-stock associations shall be entitled to a credit upon the tax herein imposed for any amount paid to the State for such preceding twelve months under any general revenue bill, as a privilege tax, unless otherwise expressly provided in the act imposing the privilege tax, provided that the tax herein imposed is a State tax levied for State purposes only and no county or municipality or taxing district shall have power to levy any like tax."

This provision removes from controversy the question of whether it was intended to impose double privilege taxes.

Another assault upon the validity of the act is that it confers power upon the commissioner of finance and taxation to define net earnings as a means of finding the measure of the tax, and therefore delegates to him legislative powers in violation of the constitution. The power of determining the measure of the tax is a legislative function. In adopting the measure the legislature could have given the term "net earnings" a statutory definition, but since that was not done the phrase must be given its usual

and ordinary meaning, without any forced or subtle construction.

The determination by the State's fiscal agents, of the net earnings of corporations involves, for the most part, processes of calculation, involving detail which must of necessity be left to the administrative officers who in the discharge of their duties would be required to exercise some measure of discretion to obtain efficiency.

Statutes enacted by the legislative department are not self-executory. To become effective they must feel the touch of human energy, which administration alone can supply, and this element so essential to the efficiency of all law has never been regarded as an unauthorized delegation of legislative discretion.

As stated by Chief Justice GREEN in *House* v. *Creveling,* 147 Tenn., 597, 250 S. W., 357, as a matter of practice it has been found impossible to entirely preserve the theoretical lines between the three departments of government. In *Woods* v. *State,* 130 Tenn., 100, 169 S. W., 558, L. R. A., 1915F, 531, it is noted that official powers are commonly conferred on sheriffs, clerks of courts, notaries public, registers of deeds, district attorneys general, and other administrative officers, and that the power to make rules is commonly given to boards and commissions. 12 C. J., 847.

So the fact that limited legislative power may have been conferred upon executive or administrative officers would not necessarily affect the validity of this statute.

The defendants assign as error the action of the chancellor in holding that the taxpayer under the act could have the court review the action of the commissioner of finance and taxation to ascertain and declare net earnings

149 Tenn.—38.

of complainants for the preceding year. It is insisted that the act constitutes the commissioner a fiscal court, and that his judgments cannot be collaterally attacked. It is said that the only remedy of the taxpayer is by *certiorari* to bring the whole matter in the circuit court for review. In support of this insistence, the defendants cite *Railroad* v. *Bate,* 12 Lea, 573; *State* v. *Taxing Board,* 16 Lea, 240; *Briscoe* v. *McMillan,* 117 Tenn., 115, 100 S. W., 111; *Smoky Mountain* v. *Lattimore,* 119 Tenn., 620, 105 S. W., 1028.

Our assessment acts provide a complete system for the ascertainment of *ad valorem* taxes. Under them the taxpayer is afforded opportunity to appear before the board of equalization and have erroneous or excessive assessments corrected. Failure of the board of equalization to observe the requirements of the statute may be reviewed upon *certiorari* in the circuit courts. *Railroad* v. *Bate,* 21 Lea, 577; *Railroad* v. *State,* 8 Heisk., 808. If the taxpayer omits to avail himself of any of these remedies, and the assessment becomes final, the action of the boards of assessment and equalization, in determining the value of property for taxation, is held to be as conclusive as the judgment of a court. *Ward* v. *Alsup,* 100 Tenn., 745, 46 S. W., 573; *Tomlinson* v. *Board of Equalization,* 88 Tenn., 1, 12 S. W., 414, 6 L. R. A., 207; *Briscoe* v. *McMillan,* 117 Tenn., 115, 100 S. W., 111; *Smoky Mountain Co.* v. *Lattimore,* 119 Tenn., 632, 105 S. W., 1028.

But the Revenue Acts, which levy the privilege taxes, leave no avenue open to the taxpayer for correcting errors. These acts declare the measure of the tax, determine the rate of taxation, provide penalties for nonpayment, and make the willful failure to pay the tax a misdemeanor. The commissioner of finance and taxation who

administers. the Excise Tax Law, and the clerks of the county courts who administer the General Revenue Law, are not, in the strict sense, assessing officers. They calculate the tax according to the method provided by the act, and if the taxpayer does not voluntarily pay it, confront him with a distress warrant.

Chapter 44, Acts of 1873, Shannon's Code, 1059 et seq., provides a remedy for the taxpayer confronted by an unjust or illegal claim for taxes., The State cannot be postponed in the collection of its revenue, for the taxpayer must pay the tax under the conditions prescribed, as a condition precedent to contesting the liability for the tax or any part of it. The proceeding under the act of 1873 was not intended as the remedy for an erroneous or unjust assessment. Where the assessment of the *ad valorem* is challenged, the remedy of the taxpayer is as indicated in *Briscoe* v. *McMillan, Ward* v. *Alsup,* and other cases cited. Where the State's fiscal agents make an erroneous or illegal charge and require the taxpayer to pay more than the law authorizes them to collect, chapter 44, Acts of 1873, Shannon's Code, 1859, supplies the remedy. *Phillips* v. *Lewis,* 3 Tenn., Cas., 230; *Powder Co.* v. *Goodloe,* 131 Tenn., 499, 175 S. W., 547; *Western Oil Refining Co.* v. *Dalton,* 131 Tenn., 329, 174 S. W., 1138. Where the levy is in part unauthorized by law, the taxpayer may pay the tax under protest and recover to the extent of the illegal exaction. *Bright* v. *Halloman,* 7 Lea, 309; *Knoxville* v. *Harth,* 105 Tenn., 436, 58 S. W., 650, 80 Am. St. Rep., 901.

The bills present an actual controversy between the complainants and the State as to what items of expense

are deductible in finding the net earnings of corporations from intrastate business. The term "net earnings," not being defined by the act, must be given its usual and ordinary meaning of what is left of earnings after deducting necessary and legitimate items of expense incident to the corporate business. This question is not presented by the appeal, and must await answer and proof in the trial court.

The decree of the chancellor is affirmed, and the causes remanded for answer and further proceedings not inconsistent with this opinion.