M. & E. SOLOMON TOBACCO COMPANY, Appellant, *v.* BENJAMIN F. COHEN et al., as Surviving Members of the Firm of SIMON AUERBACH & Co., Respondents.

SALES — CONTRACT FOR SALE OF GOODS IN BOND — WHEN VENDEE ENTITLED TO DUTY REFUNDED THEREON. Where, in a memorandum of sale of imported tobacco, stored in a bonded warehouse, on which the duty had not been fixed, the price named was a certain sum per pound, including the duty thereon, which was estimated at seventy cents per pound, but "if appraised at less," the difference in duty to be allowed vendee, the tobacco to be taken and paid for within five months, and the vendee took and paid for the tobacco within the time named, and in addition thereto also paid the vendors sixty-one cents per pound for the duty as fixed by the collector, the vendors paying over such duty to him, under protest, and thereafter such proceedings were instituted by them that the protest was sustained and the duty reduced to thirty-five cents per pound, the collector refunding to them the excess of duty, out of which ·

they paid fifty per. cent for the services of their attorney, leaving the remainder in the hands of the vendors, who refused to pay it over to the vendee upon its demand, held that the vendee was entitled to a judgment against the vendors for such balance; since the rights of the parties depend on the meaning of the expression "if appraised at less," which means a lawful appraisal, whether made by the collector or adjudged by the court; it means such an appraisal as the law required and justified, not such as was made by the collector, which was illegal and was treated by the government as illegal. In effect, the sale was subject to the payment of the duty by the vendee, but the vendors were to pay it for the vendee out of moneys furnished for the purpose, so that the vendors must be deemed to have received the refunded duty for the benefit of the vendee who is entitled to it, therefore, less the expenses of collecting it.

*Solomon Tobacco Co.* v. *Cohen,* 95 App. Div. 297, reversed.

(Argued February 14, 1906; decided March 20, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 17, 1904, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial without a jury and granting a new trial.

The trial court found that on the 10th of June, 1890, the defendants sold to the plaintiff 37 bales of Sumatra tobacco at $2.25 a pound, including estimated duty, pursuant to a written contract made for and in behalf of the defendants by their duly authorized brokers, of which the following is a copy:

"NEW YORK, *June* 10 / 90.

"Sold to M. & E. Solomon Tob. Co.

"For account of S. Auerbach & Co.

"Terms: Duty cash 70c. If appraised at less diffce. to be allowed $5,000. 4 & 5 mos. — Balance less discount for unexpired time. All to be taken in five months.

"37 bales Deli.·              NY–K              SLI.

"Examined and accepted                          at $2.25.

"MAURICE ELLER & SON,

"*Brokers.*"

The tobacco, recently imported, was in a bonded warehouse, and the duty thereon had not been fixed, for there had been no appraisal. The sum of 70 cents a pound was arbitrarily agreed upon by the parties at the time of the sale as the

probable maximum of duty upon said tobacco, and, as the trial judge found, "It was expressly agreed in the aforesaid contract that if the tobacco should be dutiable at a less sum the difference should be allowed to the plaintiff."

Shortly after the contract was made the tobacco was appraised and the duty collected at the rate of 61 cents per pound, which was fixed by an erroneous and unlawful method of classification. The difference of 9 cents between the estimated rate stated in the contract and that fixed by the collector of the port of New York was allowed to the plaintiff, which, between June 16th and December 1st, 1890, paid the defendants for the tobacco substantially in accordance with the terms of the contract. The plaintiff, between said dates, upon withdrawing the tobacco from bond in installments, paid the defendants on each occasion the sum of 61 cents per pound as and for the duty fixed by the collector, said payments amounting in the aggregate to $3,832.63. Upon receiving said amount of duty from the plaintiff the defendants paid the same to the collector, who thereupon released the tobacco, which was delivered to the plaintiff. All of said duty was paid by the defendants to the collector under the protest that said tobacco was not lawfully dutiable at the rate of 61 cents per pound, and that said rate had been fixed by an erroneous and unlawful method of classification. Thereafter such proceedings were had that said protest was sustained, the duty upon the tobacco was reduced, and on December 30th, 1899, the collector refunded to the defendants, of the duty so paid as aforesaid, the sum of $1,311.50, of which they paid 50 per cent to their attorney for the collection thereof. The trial court found that on the 30th of December, 1899, the derendants had received to the plaintiff's use the sum of $655.75, which they refused on due demand to pay to the plaintiff. No material fact was found except as thus stated. Judgment was ordered in favor of the plaintiff for the sum of $655.75, with interest thereon from the date of demand. Upon appeal to the Appellate Division the judgment was reversed and the plaintiff appealed to this court.

*Louis Marshall* and *Abraham Benedict* for appellant. The construction of the contract adopted by the trial court is the only admissible construction, and the Appellate Division erred in reversing the judgment. (Benjamin on Sales, §§ 295–302; 1 Pars. on Cont. [7th ed.] 585; *Smith* v. *Kerr*, 108 N. Y. 31, 37; *Wells* v. *Alexandre*, 130 N. Y. 642; *H. C. & C. Co.* v. *E. C. & C. Co.*, 113 Fed. Rep. 256; *Matter of Blumlein*, 55 Fed. Rep. 383; 2 Pars. on Cont. [7th ed.] 292; *Woodruff* v. *Woodruff*, 52 N. Y. 53.)

*B. F. Einstein* for respondents. The plaintiff's claim must be determined solely upon the contract under which the tobacco was sold. (*Woolsey* v. *Funke*, 121 N. Y. 87; *Nicoll* v. *Sands*, 131 N. Y. 24; *Woodruff* v. *Woodruff*, 52 N. Y. 53; *Hepburn* v. *Griswold*, 8 Wall. 604; *Parker* v. *Davis*, 12 Wall. 457; *Wadsworth* v. *Green*, 1 Sandf. 78; *Moore* v. *Des Arts*, 1 N. Y. 359.) The equities of this case are entirely with the defendants. (*Seeberger* v. *Castro*, 153 U. S. 32.) There can be no recovery for money had and received. (*Butterworth* v. *Gould*, 41 N. Y. 450.)

VANN, J. The question presented for decision is what did the parties mean by their brief memorandum in view of all the circumstances surrounding them when they made it? The question is close, for the courts below divided in judgment upon it and we are compelled to decide by the vote of a majority. The parties might well have been more explicit in their contract and not have left to implication that which could have been expressly stated by the use of one or two additional words. It is not for us, however, to criticise but to decide, and in announcing our decision in favor of the plaintiff we state the following as, in brief, the grounds of our judgment.

It would naturally be expected that the plaintiff, who furnished the money to pay the duty, would be entitled to any overpayment exacted by the agents of the government, rather than the defendants, who, although making the pay-

ment, in fact did not use their own money for the purpose. No one was really interested in the amount paid except the plaintiff, upon whom the burden of the duty fell, although the defendants formally handed the money over because the government would accept it only from the importer. While the sale was for the nominal sum of $2.25 per pound, the real purchase price was that sum less the estimated duty of 70 cents to be advanced by the plaintiff in cash for the sole purpose of paying the duty. It was expressly conceded at the trial that the "seventy cents entered into the price of $2.25," and that "$2.25 per pound means the price of the tobacco per pound including the seventy cents duty." The sum of seventy cents, however, having been arbitrarily agreed upon merely for convenience, was by the terms of the contract subject to reduction either exclusively on the basis of the appraisal made by the collector, or by the final and only legal appraisal which was made in effect through an adjudication by the Federal courts. The rights of the parties depend on the meaning of the expression "if appraised at less," which, as we read it, means a lawful appraisal, whether made by the collector or adjudged by the court. It means such an appraisal as the law required and justified, not such as was made by the collector, which was illegal and has been treated by the government as illegal. Since the plaintiff advanced the duty as estimated simply for the protection of the defendants, the word "appraised" should not be limited to the unlawful action of the collector, but should be extended to the method, whatever it was, by which the lawful duty was ascertained. It is obvious that the real price of the tobacco was $1.55 per pound, plus the lawful duty to be ascertained by an appraisal, but the plaintiff was to advance enough to protect the defendants who were liable to the government as they had imported the tobacco. Such advance was made simply to indemnify the defendants against loss and any balance left after payment of the actual duty was to be restored. Thus the sale in effect was subject to the payment of the duty by the plaintiff, but the defendants were to pay it for them out of moneys furnished for the purpose.

The appraisal by the collector was at sixty-one cents and the difference between that sum and seventy cents, the amount advanced to pay the duty, has been restored, but the difference between the duty called for by the collector's appraisal and thirty-five cents, the rate fixed by the courts, although paid back by the government to the defendants, has not been paid by them to the plaintiff.

The time fixed for the performance of the contract does not control, as the defendants were not to pay the duty with their own money. There was no postponement of performance of any part of the contract in which the defendants had a pecuniary interest. They were to get their pay within the time fixed for performance in any event, and what interest had they beyond that? The lawful appraisal might have been made within the five months provided for payment of the purchase price to the defendants, and even if it was not made within that period of what concern was it to them, as they had all they were entitled to? The fact that the mistake of the collector was not acknowledged for a long time gave them no title to the money. The delay in the final appraisal caused them neither loss nor inconvenience. The risk was not theirs, but the plaintiff's, who performed within the time allotted and thereupon the real interest of the defendants ended. While it was not their legal duty to take steps for a further and lawful appraisement, it was a matter of fairness to their customers, because they had been paid for what they sold and they might well take such voluntary action as the interests of their customers required. They were not compelled to act, but having acted, the result was not for their own benefit but for the benefit of the one who furnished the money to them to pay the duty. They commenced no action to recover the money back, but entered a protest when it was paid, employed an attorney apparently upon a contingent fee, probably appealed to the secretary of the treasury within the time required by statute, and then let the matter rest until the lawful rate was determined in an action brought by other importers. (*In re Blumlein*, 49 Fed.

Rep. 228; 55 Fed. Rep. 383.) The plaintiff could not protest, as it had no relations with the government, and the defendants by protesting showed that they thought the collector's appraisal was unlawful. After the lawful rate had been fixed by the court, the custom house officers, as one of them testified, "went back over their (our) figures and appraisements made on the former basis and corrected them to conform to the decision. \* \* \* The real adjustment resulted in a refund to the importer and was upon the basis of the examination of the samples of the tobacco originally made." The plaintiff provided the money and ran the only risk and it was within the reasonable contemplation of the parties that it should receive the amount refunded by the government, after payment of expenses. *Ex æquo et bono* the defendants had no right to it, but simply received it to the use of the plaintiff.

In a "bought" memorandum drawn by a broker the essentials are expressly stated and the rest left to reasonable implication from what is thus stated, when considered in the light of the situation of the parties and the circumstances known to both.

The test is what would a reasonable man infer on reading the contract in the light of that situation and those circumstances if the facts ultimately developed occurred to him as possible or likely to happen.

The defendants are to be commended for their efforts to protect their customers, and they have been paid their expenses in so doing. It was not their money they were looking after but the money of the plaintiff. Unless they contracted with reference to the lawful duty they are in the attitude of speculators at the expense of their patrons. Good faith and fair dealing require a construction that will give effect to the contract as a reasonable man would understand it at the time it was made, and this we have endeavored to do.

We find no error of law committed by the trial judge, and as the judgment rendered by him was not reversed on the facts, but on the law only, we think the order of the Appel-

late Division should be reversed and the judgment of the trial court affirmed, with costs in Appellate Division and in this court.

CULLEN, Ch. J., EDWARD T. BARTLETT and WILLARD BARTLETT, JJ., concur; GRAY, HAIGHT and CHASE, JJ., dissent on opinion of Appellate Division below.

Ordered accordingly.