## FRIEND v. ROSENWALD.

(Supreme Court, Appellate Division, First Department. February 7, 1908.)

SALES—TERMS—EVIDENCE—QUESTION FOR JURY.

> Evidence in an action by the purchaser of tobacco in bond, who paid the estimated amount of duties to defendant, the seller and importer, who paid the same to the collector, and, on the duties being subsequently reliquidated at a less amount, received back from the government the excess, *held* sufficient to go to the jury on plaintiff's contention that he bought the tobacco at a certain amount per pound, and in addition was to pay the duties whatever they were, and so was entitled to the rebate received by defendant from the government.

Appeal from Trial Term.

Action by Sophia Friend against Sigmund Rosenwald, as surviving member of a firm of E. Rosenwald & Bro. From a judgment dismissing the complaint at the close of plaintiff's case on the merits, plaintiff appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

William D. Sporborg, for appellant.

Einstein, Townsend & Guiterman (B. F. Einstein, of counsel), for respondent.

CLARKE, J. This is an action for money had and received to the plaintiff's use. The defendant is the surviving partner of the firm of E. Rosenwald & Bro., who, at the time of the transactions in question, were importers of Sumatra tobacco. The plaintiff holds an assigned claim of E. & G. Friend & Co., who in 1889 and 1890 were purchasers of imported tobacco from the defendant's firm. Rosenwald & Bro. had in bond, subject to the payment of the duties, a quantity of Sumatra tobacco, of which 27 bales were sold to plaintiff's assignors on November 29, 1899, and 53 bales thereof on May 28, 1890. It was in evidence that tobacco in bond is sold in two ways: At the "long price," which denotes that the duty does not come in question at all, but that the goods are sold at a flat price without reference to the

duty; and at the "short price"—that is, that the merchandise and the duties are separated. The claim is here that the tobacco in question was sold by defendant's firm to plaintiff's assignor at the short price; that the purchaser was to pay the amount of the duties, whatever they were, in cash, and give four or five months notes for the merchandise; that in anticipation of the taking effect of the McKinley tariff in October, 1890, the duties on all the tobacco purchased, as then liquidated, were paid in cash before September 22d, because, if paid thereafter, the tobacco would have been subject to the new rates; that the plaintiff's assignors paid the estimated amount of the duties on these purchases to the defendant in cash, who, as the importers, paid the same to the collector; that subsequently the duties were reliquidated upon these goods, and that the defendants received back from the government $2,484.58 as an overpayment, and, as said sum had in the first place been paid by plaintiff's assignors to defendant's firm, they received this refund to the plaintiff's use, and ex æquo et bono should pay it over to the plaintiff.

The payment of the duties in cash by plaintiff's assignors to the defendant's firm, and the receipt of the refund by the defendant's firm from the government, were sufficiently established by the evidence. If the transaction was as claimed by the plaintiff, then a cause of action was made out. "Assuming that the plaintiff is right in his construction of the facts, the case falls within the familiar doctrine that money in the hands of one person to which another is equitably entitled may be recovered in a common-law action by the equitable owner upon an implied promise arising from the duty of the person in possession to account for and pay over the same to the person beneficially entitled. The action for money had and received to the use of another is the form in which courts of common law enforce the equitable obligation. * * * No privity of contract between the parties is required, except that which results from the circumstances. Mason v. Waite, 17 Mass. 560. The right on the one side and the correlative duty on the other create the necessary privity, and justify the implication of a promise by the defendant to do that which justice and equity require. It is immaterial, also, whether the original possession of the money by the defendant was rightful or wrongful. It is sufficient that the duty exists on his part, created by the circumstances, to account for and pay it over to the plaintiff." Roberts v. Ely, 113 N. Y. 128, 20 N. E. 606. "It would naturally be expected that the plaintiff, who furnished the money to pay the duty, would be entitled to any overpayment exacted by the agents of the government, rather than the defendants, who, although making the payment in fact, did not use their own money for the purpose. No one was really interested in the payment and the amount paid except the plaintiff, upon whom the burden of the duties fell, although the defendants formally handed the money over, because the government would accept it only from the importer * * * The plaintiff provided the money and ran the only risks, and it was within the reasonable contemplation of the parties that it should receive the amount refunded by the government after payment of the expenses. Ex æquo et bono the defendant had no right to it, but simply received it to the use of the plaintiff." Solomon

Tobacco Co. v. Cohen, 184 N. Y. 308, 77 N. E. 257. The question in the case at bar is whether there were sufficient facts from which the jury might infer that in this transaction the plaintiff's assignors were to, and did, pay the duties as such. The complaint having been dismissed upon the merits at the close of the plaintiff's case, every reasonable intendment must be indulged in favor of the plaintiff.

As to the first purchase of 27 bales, the invoice reads:

"Nov. 29, 1889.

"Messrs. E. & G. Friend & Co., city, bought of E. Rosenwald & Bro., terms 5 months, duty cash, 27 bales tobacco as per weigher's return, 4765-216-4549 lbs. at $1.65, $7,505.85."

One of the members of the firm of E. & G. Friend & Co. testified that they purchased those 27 bales of tobacco from the defendant's firm and had a talk with a member thereof, who said that the price of this tobacco was so much, naming the amount:

"That is what we bought it at, $1.65 per pound for the tobacco and the duty. Mr. Rosenwald said we could have this tobacco on five months' time, and the duty was to be cash, which we accepted. We were to pay the duty when we withdrew the tobacco. The price was $1.65 a pound with the duty."

In regard to the second transaction, the 53 bales, the invoice is as follows:

"New York, May 28, 1890.

"Messrs. E. & G. Friend & Co., city, bought of E. Rosenwald & Bro., terms four and five months, duty $5,349.31 cash, 53 bales tobacco as per weigher's return, 9460-424-9036 lbs. at $2.09$\frac{20}{}$, $18,903.31."

In regard to this the witness testified to a conversation with the same member of the defendant's firm:

"The conversation was that we were to buy this tobacco on four and five months. We were to buy 53 bales. The terms were made four and five months notes, and the duty was to be cash as we withdrew it. That we were to pay to them. We were to pay the duty. We were to give four and five months' notes for the tobacco, and the notes which we gave did not include the duty. The price was $2.09$\frac{1}{20}$. The duty was included in that. All those goods which we bought at that time were taken out of bond and the duty paid on them."

Being shown the invoice, he was asked:

"Q. It says on there, duty $5,349.31 cash. What does that mean, as far as your agreement with him was concerned? A. That meant that we were to pay $5,349.31 for duty, and we were to give four or five months notes for the balance, the merchandise portion. Q. And the same way in this other invoice —you were to pay the duty? A. The same. The tobacco was bought at the short price."

From the conversations testified to, and the invoices or memoranda of the sales, and the testimony as to the custom of the trade, I think the plaintiff fairly made out a prima facie case that these transactions were at the short price, and that the purchaser paid the duties as duties in cash, and so was entitled to any refund that might be allowed thereon. Having so made out a case, he was entitled to go to the jury, and the dismissal of the complaint upon the merits at the close of the plaintiff's case was error.

The judgment should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.