IDEAL CEMENT COMPANY, Appellant,

v.

UNITED GAS PIPE LINE COMPANY,
Appellee.

SCOTT PAPER COMPANY, Appellant,

v.

UNITED GAS PIPE LINE COMPANY,
Appellee.

Nos. 18103, 18118.

United States Court of Appeals
Fifth Circuit.

Sept. 2, 1960.

Rehearing Denied Oct. 5, 1960.

Second Petition for Rehearing Denied
Nov. 16, 1960.

Edwin J. Curran, Jr., Mobile, Ala., Joseph F. Johnston, E. T. Brown, Jr., Birmingham, Ala., Vickers, Riis, Murray & Curran, Mobile, Ala., for Ideal Cement Co.

E. Dixie Beggs, Pensacola, Fla., George E. Stone, Mobile, Ala., Yonge, Beggs & Lane, Pensacola, Fla. (Saunders Gregg, Shreveport, La., of counsel), for United Gas Pipe Line Co.

Hardy B. Smith, Mobile, Ala., Joseph F. Johnston, E. T. Brown, Jr., Birming-

ham, Ala., Gaillard, Gaillard & Smith, Mobile, Ala., for Scott Paper Co.

MacDonald Gallion, Montgomery, Ala., Guy Sparks, Anniston, Ala., William H. Burton, Montgomery, Ala., for State of Alabama, amicus curiae.

Before RIVES, Chief Judge, and JONES and WISDOM, Circuit Judges.

RIVES, Chief Judge.

The issue in these cases is whether a municipal license tax is applicable to the business of distributing natural gas to industrial consumers within the municipality's taxing jurisdiction, when such distribution is the terminal act of the transportation of that natural gas from without the state. The tax is measured by gross receipts from sales of natural gas within the municipality's taxing jurisdiction.

The issue arises out of suits filed by the United Gas Pipeline Company against Ideal Cement Company and Scott Paper Company for reimbursemment of such taxes paid by United on gas distributed to Ideal and Scott. Ideal and Scott defended on the ground that the tax reimbursement articles [1] of their separate contracts with United did not obligate them to reimburse United for taxes not validly levied upon and paid by United, and that the tax could not validly be applied to gas distributions. Both Ideal and Scott assert that United's right to reimbursement fails entirely if the tax ordinance is found to be inapplicable. United's position is that, if the tax were held to be inapplicable, it would be obligated to credit Ideal and Scott with any amounts which United might recoup from the municipality. Thus the inapplicability of the tax would be either a complete or partial defense to United's actions.

If it appeared that United, on the one hand, and Ideal and Scott, on the other, were engaging in a friendly or simulated test, then the court should refuse to pass upon the applicability of the taxing ordinance.[2] When, however, as in this case, in pursuance of an honest and actually antagonistic assertion of rights and defenses by the one party against the other, there is presented a question involving the applicability [3] of a municipal ordinance, then, even though the municipality has not intervened or been made a party, and will not be bound under principles of res judicata, the court must proceed to determine the question as between the parties to the suit.[4]

1. Each contract contains an article reading as follows:

"Tax Reimbursement. Buyer agrees to reimburse Seller for all taxes which may be levied upon and paid by Seller, or which Seller under contractual or legal obligation pays to the person or company on which such taxes are levied on or with respect to the gas delivered hereunder; provided, however, that no reimbursement shall be made to Seller under the provisions of this article for any taxes which were included in the weighted average price of gas under the provisions of the above Monthly Rate.

"The term 'taxes' as used herein shall mean any tax (other than ad valorem, income or excess profits taxes), license, fee or charge now or hereafter levied, assessed or made by any governmental authority on the gas itself or on the act, right or privilege of production, severance, gathering, transportation, handling, sale or delivery of gas which is measured by the volume, value or sales price of the gas in question; provided, however, that the term 'taxes' shall not be deemed to include any general franchise tax imposed on corporations on account of their corporate existence or on their right to do business within the State as a foreign corporation."

2. Ashwander v. Tennessee Valley Authority, 1936, 297 U.S. 288, 318, 346, 56 S. Ct. 466, 80 L.Ed. 688; Liverpool, New York & Philadelphia Steamship Co. v. Emigration Commissioners, 1885, 113 U.S. 33, 5 S.Ct. 352, 28 L.Ed. 899.

3. No question of the total unconstitutionality of the Mobile ordinance is presented, since the ordinance contains a savings clause which reads as follows: "No provision of this Code shall be applied: (a) so as to impose any unlawful tax or unlawful burden on interstate commerce or on any activity of the State or Federal Governments * * * *."

4. See Chicago & Grand Trunk Railway Co. v. Wellman, 1892, 143 U.S. 339, 12

United is a Delaware corporation, which has its principal place of business in Louisiana. It maintains pipelines for the transmission of natural gas from Louisiana into Mississippi, Alabama and Florida. In Alabama, United distributes directly to seven industrial consumers located in the City of Mobile and its police jurisdiction, including Ideal and Scott, and to a local distributor, Mobile Gas Service Corp., which in turn services domestic, commercial and industrial customers of its own.

United brings gas into the Mobile, Alabama area from Mississippi and Louisiana by three pipelines and these pipelines converge at a station owned by United near the City of Mobile. At this station, the pressure of the gas is reduced by United from that at which it entered the State of Alabama. From this station, United has four pipelines, one of which continues on to Pensacola, Florida. The remaining three lines go to three separate metering stations where the gas is either sold to Mobile Gas Service Corporation or delivered into its pipelines. United has contracted with Mobile Gas Service Corporation to handle the distribution and metering of the gas in the City of Mobile, even to United's own customers, and likewise to handle the accounting and collecting of revenues of sale. As compensation to Mobile Gas Service Corporation for the services so provided, United pays it a certain percentage of the money United collects from the sale of gas.

On June 28, 1946, Ideal entered into a contract with Mobile Gas Service Corporation for the sale and purchase of natural gas. Mobile Gas Service Corporation assigned this contract to United on November 1, 1954, and United subsequently sold and delivered natural gas to Ideal directly under said contract until July 25, 1956, when the agreement expired. On July 17, 1956, United and Ideal entered into a contract for the sale and purchase of natural gas for a term commencing on July 26, 1956 and ending January 1, 1965, which contract is still in effect, and under this contract substantial quantities of natural gas have been sold and delivered by United to Ideal.

Under the first contract (June 28, 1946), Ideal agreed to pay Mobile Gas Service Corporation, as seller, for any "increased or new tax" which might be imposed on it as a result of "the production, severance, gathering, transportation, handling, sale or delivery of gas, or upon the right or privilege to produce, sever, gather, transport, handle, sell, or deliver gas." The tax in question, if applicable, is such an "increased or new tax."

In the second contract, that is, the one which has been in force since July 26, 1956, Ideal agreed to reimburse United for all taxes which might be levied upon and paid by United, or which United under contractual or legal obligation might pay to another person or company on which such taxes were levied with respect to gas delivered under such contract to Ideal.

On July 21, 1955, Scott and United entered into a contract for the purchase and sale of natural gas, which is still in force, and which contains a tax reimbursement article heretofore quoted in footnote 1.

United paid the taxes at issue in this case to the City of Mobile for the years 1956, 1957 and 1958, and has paid to Mobile Gas amounts equal to the increased taxes paid by Mobile Gas for deliveries to Ideal and Scott pursuant to United's contract with Mobile Gas. These taxes were assessed in 1956 and 1957, and are in addition to the taxes paid directly to the City of Mobile by United for these years.

S.Ct. 400, 36 L.Ed. 176; Coffman v. Breeze Corporations, 1945, 323 U.S. 316, 65 S.Ct. 298, 89 L.Ed. 264; Casey Jones, Inc. v. Texas Textile Mills, 5 Cir., 1937, 87 F.2d 454, 456; Solomon Tobacco Co. v. Cohen, 1906, 184 N.Y. 308, 77 N.E. 257; Wayne County Produce Co. v. Duffy-Mott Co., Inc., 1927, 244 N.Y. 351, 155 N.E. 669.

United made demands on Ideal and Scott for reimbursement, which demands were refused, on the ground that such taxes were not reimbursable under the contracts; whereupon United filed these actions.

There is no genuine issue as to any of the material facts. Consequently each of the parties filed a motion for summary judgment. Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. The district court, after stating the facts in more detail, denied the motions of Scott and Ideal and granted United's motion.[5]

The Mobile License Ordinance reads, in pertinent part, as follows:

"An Ordinance

"To fix the rate of annual licenses in the City of Mobile and in the police jurisdiction thereof.

"Be It Ordained by the Board of Commissioners of the City of Mobile as follows:

"Section 1: The following is hereby declared to be and is adopted as the schedule of licenses for the year beginning January 1, 1955, and ending December 31, 1955, and for each subsequent year:

"(1) For practicing, engaging in, carrying on or conducting any exhibition, trade, vocation, occupation or profession in the City of Mobile, Alabama;

"(2) *For keeping, engaging in or carrying on business of any nature,* offering merchandise for sale, soliciting orders, or *making deliveries of any merchandise,* rendering or giving or selling service of any kind, taking orders for merchandise to be subsequently delivered by any agency or means, or accepting payments on orders for merchandise to be delivered subsequently by any agency or means, any or all of which acts or transactions are done in or from the City of Mobile, Alabama;

"(3) *For entering the City of Mobile to do business,* to make sales, to make deliveries *or to do any act for which a license is required of businesses* located in the City of Mobile;

"(4) For storing, storing for sale or use, withdrawing from storage for sale or use, any or all of which acts or transactions are done in or from the City of Mobile;

"And each and every person, firm, company, association, partnership, agency or corporation, wherever located, engaging in or carrying on or doing any act or thing herein specified, in or from the City of Mobile, Alabama, shall pay the City of Mobile an annual license therefor as follows, to-wit:

\* \* \* \* \* \*

"193. Gas Companies: Each person, firm or corporation engaged in the business of selling or distributing natural gas, in an amount equal to 3% of the gross receipts for the business transacted by such person, firm or corporation, in the City of Mobile for the preceding year from the sale of such natural gas sold or distributed from any point or points in the City of Mobile by such person, firm or corporation for any purpose whatsoever.

"The provisions of the above paragraph to be applied to operation in the Police Jurisdiction on the basis of 1½% of said gross receipts." (Emphasis supplied.)

From the terms of the ordinance, the Mobile license tax applies to the United Gas Pipe Line Company from the time its gas *enters* the *City of Mobile* for the purpose of delivery to Scott and Ideal. Moreover, procurement of a license is a prerequisite to United distributing its gas within the City of Mobile. This is made evident by Section 19 of the Ordinance:

"Section 19: That any person, firm, association or corporation, who shall engage in any business, trade or profession, or keep any establish-

5. Reported in 176 F.Supp. 748.

ment, or do any business or any act for which a license is required by the foregoing ordinance, *without having first obtained such license,* shall, upon conviction, for each day such business, trade or profession or such establishment is kept or carried on and for each act so done, without such license, be fined not less than one nor more than one hundred dollars, and may also be sentenced to imprisonment for not exceeding six months." (Emphasis supplied.) [6]

Thus, United must pay a tax each year before it can supply gas to Scott and Ideal within the City of Mobile.[7] If these deliveries to Scott and Ideal within the City of Mobile are part of the flow of interstate commerce, the ordinance is inapplicable, for it would be a tax whose payment is a precondition to exercising the privilege of engaging in interstate commerce "and that avenue of approach had long been declared unavailable under the Commerce Clause."[8]

█ The crucial question to be decided, therefore, is whether the gas is moving in interstate commerce when it enters the City of Mobile—at which point the Mobile City tax becomes operative upon it. Everyone agrees that when the gas flows from Louisiana across the Alabama border it is in interstate commerce. We must search, therefore, for some point subsequent to its entry into

Alabama at which this interstate commerce is transformed into intrastate commerce, or, at least, becomes *separable* from interstate commerce.[9] Appellee contends that this point of separation is delivery of the gas by United into the distribution system of the Mobile Gas Service Corporation and the reduction in pressure of the gas by both companies within Alabama, prior to its delivery to Scott and Ideal. But the mere fact that the gas moves from pipelines owned by United to pipelines owned by Mobile Gas, without more, is not a sufficient separation, for to this point there has been no change whatsoever in the commodity being shipped. "The separation must be realistic."[10] Thus it must be that the separation from interstate commerce is effected, if at all, by the reduction in the pressure at which the gas is being transported. But is this change any more "realistic"? We think not. Changes are made in gas pressures to facilitate the movement of the gas through the pipelines. Pressures are increased prior to shipment and during the course of shipment, and the pressures are reduced as the gas approaches the ultimate consumers.[11] The gas, however, is moving all the time. The flow of gas from Louisiana to the Ideal and Scott plants is "steady and continuous."[12] It may be that the process of breaking down gas for distribution to local domestic consumers closely resembles the "breaking

6. See also Alabama Code of 1940, Tit. 37 Municipal Corporations, § 754:
"It shall be unlawful for any person, .firm, or corporation, or agent of a firm or corporation, to engage in any of the businesses or vocations in a city for which a license may be required *without first having procured a license therefor* * * *." (Emphasis supplied.)

7. Although the tax is *measured* by the previous year's receipts, the amount so determined must be paid *prior* to doing business in the City of Mobile *each year.*

8. Northwestern States Portland Cement Co. v. State of Minnesota, 1959, 358 U.S. 450, 464, 79 S.Ct. 357, 365, 3 L.Ed.2d 421. See Spector Motor Service v. O'Connor,

1951, 340 U.S. 602, 71 S.Ct. 508, 95 L. Ed. 573; Underwood Typewriter Co. v. Chamberlain, 1920, 254 U.S. 113, 119, 41 S.Ct. 45, 65 L.Ed. 165.

9. See Michigan-Wisconsin Pipe Line Co. v. Calvert, 1954, 347 U.S. 157, 169, 74 S. Ct. 396, 98 L.Ed. 583.

10. Ibid.

11. State Tax Commission of Mississippi v. Interstate Natural Gas Co., 1931, 284 U.S. 41, 43–44, 52 S.Ct. 62, 76 L.Ed. 156 (Holmes, J.).

12. See Michigan-Wisconsin Pipe Line Co. v. Calvert, 1954, 347 U.S. 157, 163, 74 S. Ct. 396, 399, 98 L.Ed. 583.

of an original package,"[13] although the vitality of this "merely mechanical consideration" is open to serious question.[14] We find, however, that the reductions in gas pressure prior to delivery to Scott and Ideal are not sufficiently "realistic" changes to separate the gas from the flow of interstate commerce as its crosses into the jurisdiction of the City of Mobile.[15] In the course of its argument appellee concedes that sales of gas to industrial consumers in the circumstances of this case are interstate commerce, but argues that these interstate shipments are accompanied by local incidents subject to local taxation.[16] But they fail to go on to meet the question before us, which is whether the City of Mobile has chosen to levy its tax on those local incidents, or whether it has chosen to directly tax the flow of interstate commerce.[17] Thus, appellee contends that the City of Mobile could validly tax *sales* of gas by United to Scott and Ideal.

That may be so. But the City has not attempted to tax United's sales made in Mobile, nor the "use" of the gas sold by United, nor United's property in Mobile.[18] "One must comprehend * * * the difference between the use of magic words or labels validating an otherwise invalid tax and their use to disable an otherwise constitutional levy. The latter this Court has said may sometimes be done." [19] What the City has done in this case, by the words of its ordinance, is to make the procurement of a license a precondition of engaging in interstate commerce within its jurisdiction.

Nor is the evil attending license taxes [20] on interstate commerce merely a question of labels. Provisions for the levy of license taxes are ordinarily accompanied by summary collection procedures.[21] So here, the Alabama Code provides for injunctions against firms who fail to pay municipal license taxes on time.[22] Thus, the 'effect of nonpay-

13. See East Ohio Gas Co. v. Tax Commission, 1931, 283 U.S. 465, 471, 51 S.Ct. 499, 501, 75 L.Ed. 1171; Memphis Natural Gas Co. v. Beeler, 1942, 315 U.S. 649, 653, 62 S.Ct. 857, 86 L.Ed. 1090.

14. See Panhandle Eastern Pipe Line Co. v. Public Service Commission, 1947, 332 U.S. 507, 512, 68 S.Ct. 190, 193, 92 L. Ed. 128.

15. Cf. State Tax Commission of Mississippi v. Interstate Natural Gas Co., 1931, 284 U.S. 41, 43, 44, 52 S.Ct. 62, 76 L. Ed. 156 (Holmes, J.).

16. See Pennsylvania Gas Co. v. Public Service Commission, 1920, 252 U.S. 23, 40 S.Ct. 279, 64 L.Ed. 434; Panhandle Eastern Pipe Line Co. v. Public Service Commission, 1947, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128; Texas Gas Transmission Corp. v. Atkins, 1954, 197 Tenn. 123, 270 S.W.2d 384.

We do not decide whether United's total activities in Mobile provide a sufficient "nexus" for the City to levy a tax without offending *due process*. See Scripto, Inc. v. Carson, 1960, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660.

17. That the tax is apportioned so that it cannot be duplicated, and does not discriminate against interstate commerce, does not alter its invalidity if the tax is one on the privilege of engaging in interstate commerce. See Spector Motor Serv-

ice v. O'Connor, 1951, 340 U.S. 602, 609, 71 S.Ct. 508, 95 L.Ed. 573.

18. See McLeod v. J. E. Dilworth Co., 1944, 322 U.S. 327, 330, 64 S.Ct. 1023, 88 L.Ed. 1304; Spector Motor Service v. O'Connor, 1951, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573. The fact that the tax is measured by gross revenue is not inconsistent with its being a tax on the *privilege* of doing business. Railway Express Agency v. Commonwealth of Virginia, 1954, 347 U.S. 359, 367, 74 S.Ct. 558, 98 L.Ed. 757.

19. Railway Express Agency v. Commonwealth of Virginia, 1959, 358 U.S. 434, 441, 79 S.Ct. 411, 416, 3 L.Ed.2d 450.

20. Id., 358 U.S. at pages 438, 448, 79 S. Ct. at pages 414, 419.

21. That the means whereby a tax is to be collected is relevant to a consideration of its effect on commerce is emphasized in Northwestern States Portland Cement Co. v. State of Minnesota, 1959, 358 U.S. 450, 462, 79 S.Ct. 357, 3 L.Ed.2d 421; Underwood Typewriter Co. v. Chamberlain, 1920, 254 U.S. 113, 119, 41 S.Ct. 45, 65 L.Ed. 165.

22. See Alabama Code of 1940, Tit. 37 Municipal Corporations, §§ 760–764, entitled "Cumulative Remedies for Collection of License Tax."

ment of a license tax is not the usual slight disruption of commerce which may follow a levy on a delinquent taxpayer's property. Rather, interstate commerce is brought to an immediate halt by means of the injunctive remedy. Moreover, doing business without a license will bring down upon the violator extreme criminal sanctions.[23]

Since the Mobile City license tax was inapplicable to sales of gas by United to Scott and Ideal, the district judge erred when he granted summary judgment for United. The judgments are reversed and the causes remanded.

Reversed and remanded.

## On Petition for Rehearing

### PER CURIAM.

United raises certain questions concerning the opinion of the Court, which we shall briefly attempt to clarify.

We held that the tax is on the act or privilege of delivering gas in the City of Mobile. This is the *incidence* of the tax.

Next, we decided that the delivery of the gas as the terminal act of its transportation from without the State is inseparable from interstate commerce, and not merely a "local incident" of such commerce. In our discussion of this point, we said: "The crucial question to be decided, therefore, is whether the gas is moving in interstate commerce when it enters the City of Mobile—at which point the Mobile City tax becomes operative *upon it*." (Emphasis supplied.) We did not mean, by that sentence, to convey the idea that the tax is being levied on the gas itself. The *incidence* of the tax was resolved earlier in the opinion. At the juncture at which the quoted sentence appears in the opinion we were concerned only with determining where the act taxed by the City of Mobile stood in relation to the flow of interstate commerce. We held that delivery of the gas directly to industrial consumers in the City of Mobile is an integral part of its movement in interstate commerce, and that a tax on the privilege of making such deliveries is a burden on interstate commerce.

The petition for rehearing is Denied.

## On Second Petition for Rehearing

### PER CURIAM.

To clear up any ambiguity which may remain in our opinion and holding, we intended to hold and do hold that the Mobile City license tax is inapplicable as to gross receipts for the gas distributed by United directly to Ideal and Scott. In our opinion, however, the tax is applicable to the gross receipts of the local distributor, Mobile Gas Service Corporation.

United properly reimbursed Mobile Gas for the increased taxes paid by Mobile Gas on account of distributions to Ideal and Scott pursuant to United's contract with Mobile Gas.

The second petition for rehearing is Denied.

---

23. See, e. g., Section 19 of the Mobile License Ordinance, quoted in text supra.