TEXAS GAS TRANSMISSION CORP. *v.* ATKINS.

(*Nashville,* December Term, 1953.)

Opinion filed July 23, 1954.

CANADA, RUSSELL, TURNER & ALEXANDER, of Memphis, for complainant.

ROY H. BEELER, Attorney General, ALLISON B. HUMPHREYS, Solicitor General, and MILTON P. RICE, Assistant Attorney General, for defendant.

124

Mr. Justice Swepston delivered the opinion of the Court.

The original bills in the above numbered causes were filed for the purpose of recovering excise and franchise taxes paid under protest by complainant in the amount of $30,485.61, payable July 1, 1951, and $34,037.67, payable July 1, 1952.

These taxes were collected under the presumed authority of Code Sec. 1248.143, which provides in substance, all corporations organized under the laws of Tennessee for profit and doing business in Tennessee, shall pay an annual privilege tax for the privilege of engaging in business in corporate form in this State and under Section 1316, which provides in substance, that all corporations conducted for profit organized under the laws of Tennessee, and doing business in Tennessee, shall pay annually an excise tax equal to 3.75% of the net earnings for the next preceding year, from business done in Tennessee.

The Chancellor held that complainant was engaged wholly in interstate commerce, and therefore under the case of *Spector Motor Service, Inc.* v. *O'Connor*, 340 U. S. 602, 71 S. Ct. 508, 95 L. Ed. 573 (March 26, 1951), it was not liable for these taxes. The State has appealed and assigned error in that it is said that the Chancellor erred

in holding that the complainant is engaged entirely in the doing of an interstate business in Tennessee, whereas he should have held that it was engaged to a substantial extent, in intrastate business, and (2) it is said the Chancellor erred in holding that the excise tax and the franchise tax were levied upon complainant solely for the privilege of engaging in business in Tennessee, and thus was a tax for the privilege of engaging in interstate commerce and void, whereas he should have held that these taxes are for the privilege of engaging in business in Tennessee in *corporate form*, and that this privilege was granted to complainant by the State and was exercised by the complainant during all the years involved, and that the tax was valid.

We take up first the question whether complainant was engaged partly in intrastate commerce or activities.

Complainant is a Delaware corporation qualified to do business in Tennessee, and is successor to Memphis Natural Gas Company and Kentucky Natural Gas Company by merger in 1948. The general offices which before 1948 were in Memphis, are now in Owensboro, Kentucky, but otherwise, its activities are the same as formerly; it has in Tennessee, compressor stations, metermen and dispatchers, maintenance camps, material and supplies, rights-of-way, easements and permits to cross highways, etc., and all other facilities necessary for the operation of a gas pipe line.

It brings gas from Texas and Louisiana through Mississippi, Tennessee and Kentucky into Ohio. Its customers in Tennessee are City of Memphis, Utility Division known as Memphis Light, Gas and Water Division, which takes gas at several points directly from complainant's interstate line, and moves it for distribution through lines which are neither owned nor controlled by com-

plainant, and complainant has no financial interest in the sale of gas after it leaves its main line; T. V. A., which succeeded Memphis Generating Company in the contract of March 8, 1939, between the latter and the Memphis Natural Gas Company. T. V. A. uses large quantities of gas for boiler fuel in generating electricity sold to the City of Memphis, and in the electric systems in Arkansas and Mississippi. The gas taken from complainant's interstate line is sold directly to the consumer and is moved by the purchaser a distance of four miles through pipes owned by the City of Memphis, to the T. V. A. Generating Plant. Complainant has no interest in this line, and under the purchase contract, its responsibility ends with the delivery to this line; City of Dyersburg, which has two contracts. One is for gas it distributes to local customers just as the City of Memphis does. The other is for use as boiler fuel in the Dyersburg generating plant. Under the contract complainant delivers the gas from its main line into a line owned and wholly controlled by the City of Dyersburg; Union City, which buys gas for retail distribution, and sends it from complainant's line through a line wholly owned and controlled by Union City; West Tennessee Power and Light Company serves five West Tennessee cities and 52 rural customers, all being served by taps along complainant's interstate line and delivered over lines in which complainant has no interest.

We are of opinion that all of these transactions are controlled by what was held in *Memphis Natural Gas Co.* v. *McCanless*, 180 Tenn. 688, 177 S. W. (2d) 841, wherein it was held that the Memphis Natural Gas Company was not engaged in intrastate operation. The case was decided upon the factual situation existing after the

termination of the joint enterprise contract referred to in *Memphis Natural Gas Co.* v. *Pope*, 178 Tenn. 580, 161 S. W. (2d) 211, and *Memphis Natural Gas Company* v. *Beeler,* 315 U. S. 649, 62 S. Ct. 857, 86 L. Ed. 1090, in which cases it was held that the Memphis Natural Gas Company was engaged in a joint adventure with the then privately owned Memphis Power & Light Company, and it was held liable for the tax. See page 693 of 180 Tenn., page 843 of 177 S. W. (2d).

Also the Court distinguished *Southern Natural Gas Corp.* v. *Alabama,* 301 U. S. 148, 57 S. Ct. 696, 81 L. Ed. 970, on the fact that complainant had nothing to do with the delivery and distribution of gas, whereas in the Alabama case the complainant did have control of delivery and distribution.

The remarks of Judge Green at the end of the paragraph, that one sale did not make the company a distributor was simply an additional reason why the company was not liable, regardless of whether it was engaged in interstate or intrastate operations.

The State relies also upon *State of Missouri ex rel. Barrett* v. *Kansas Natural Gas Co.,* 265 U. S. 298, 44 S. Ct. 544, 68 L. Ed. 1027, and *East Ohio Gas Co.* v. *Tax Commission,* 283 U. S. 465, 51 S. Ct. 499, 75 L. Ed. 1171.

These two cases are among those listed by Judge Green on page 692 of 180 Tenn., on page 843 of 177 S. W. (2d) in the above mentioned case, and in summary of all of the cases listed, he said in part:

"It was understood from them that the transportation of natural gas from another State and its sale at the carrier's pipe to another was interstate commerce. But that the distribution of gas through service pipes in a particular locality and sale at the

*burner tips* was intrastate commerce.'' (Our italics.)

In the Kansas case there were sales to distributors only, which was clearly interstate commerce, whereas in the Ohio case, the Company delivered the gas through its local pipes to the burner tips, which was clearly intrastate commerce.

Another activity is urged by the State as being intrastate; complainant purchases gas from Tennessee Gas Transmission Company under a contract of January 23, 1948, made by its predecessor, Kentucky Natural Gas Corp. It appears that Tennessee Natural Gas Company is a wholly separate corporation with a line coming from the Gulf States across Tennessee through Kentucky into Indiana and Illinois. The line passes through Middle Tennessee. Complainant's predecessor, Kentucky Natural Gas Corporation, constructed a line from what is now complainant's main line to Mitchellville, in Sumner County, to connect with Tennessee Natural Gas line in Middle Tennessee; this connecting line lies five miles below the Kentucky-Tennessee border and is used to supply gas to complainant to be sold in Kentucky. None of the gas is sold in Tennessee, although naturally it augments the supply going from a point above any of complainant's Tennessee customers into Kentucky.

The Chancellor held, and we think correctly, that this purchase being in furtherance of complainant's interstate transmission of gas was interstate commerce. *Ozark Pipe Line Corp.* v. *Monier*, 266 U. S. 555, 45 S. Ct. 184, 69 L. Ed. 439.

Hence we hold that complainant was not engaged in intrastate commerce in Tennessee.

The next question is whether the excise and franchise taxes were validly levied and collected.

Complainant relies upon the Spector Motor Service, Inc., case, supra, and if that case is controlling, of course the taxes are not valid; on the other hand, if that case is not controlling, the taxes are valid.

Both sides have submitted full and excellent briefs which we have read with interest, as well as the cases relied upon by the respective parties.

We do not deem it necessary to quote at length from the Spector case because it should be read in its entirety in order to be understood.

It is our conclusion that the crux of the Spector case is that the Supreme Court accepted as its basic predicate the construction placed upon the statute involved by the highest Court of Connecticut, which held that the tax was levied upon the right *to do interstate business*. The right to do business *in corporate form* was not involved in the case.

The Tennessee franchise tax, however, is imposed upon "the privilege of engaging in business *in corporate form* in this State."

The excise tax, although not expressly so providing, has likewise been construed.

In *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn. 569, at page 583, 260 S. W. 144, at page 148, involving the excise tax, the Court said:

"In *Flint* v. *Stone Tracy Co.,* 220 U. S. [107] 151, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, the court said the tax may be described as an excise upon the particular privilege of doing business in the corporate capacity; i. e., with the advantages that arise from the corporate or quasi corporate organization. We think this properly characterizes the tax levied by the act in controversy."

In *Jorgensen-Bennett Mfg. Co.* v. *Knight*, 156 Tenn. 579, 583, 3 S. W. (2d) 668, 670, 60 A. L. R. 393, the Court quoting from *Bank of Commerce & Trust* v. *Senter*, supra, said:

"'The local business of a corporation, either foreign or domestic, may support an excise measured by any reasonable method, if interstate commerce, and property beyond the state is not taxed. The Legislature imposed this tax, *not upon interstate commerce*, nor upon business beyond the state, but upon the privilege of exercising the corporate privilege in this state, and adopted as the measure net earnings from business done in the *corporate capacity*, by the corporation exercising its powers in Tennessee.' "

In *Memphis Dock & Forwarding Co.* v. *Fort*, 170 Tenn. 109, 110, 92 S. W. (2d) 408, 409, the Court, speaking with reference to the excise tax, said:

"The tax is not laid upon a particular corporate business or upon a particular transaction; it is upon the privilege of doing business as a corporation and exercising the corporate powers for the purpose of producing a profit. The source of the profit and the character of business carried on in the corporate name is immaterial. The tax is measured by net earnings that result from whatever business may be done by the corporation in the exercise of powers conferred by the charter."

In *Corn* v. *Fort*, 170 Tenn. 377, 95 S. W. (2d) 620, 106 A. L. R. 647, which involved the franchise act of 1935, which Act was held invalid as to partnerships, but valid as to corporations, the Court again referred to *Bank of Commerce & Trust Co.* v. *Senter*, supra, and said:

"This court, in *Bank of Commerce & Trust Co.* v.

*Senter*, 149 Tenn. 569, 260 S. W. 144, has expressly determined that the right to do business in Tennessee in corporate form is a taxable privilege. This conclusion follows from the nature of a corporation and the manner of its creation. * * *'' 170 Tenn. at page 385, 95 S. W. (2d) at page 623.

While it is true that the statutes at that time expressly excluded interstate commerce, whereas the present statutes do not, yet we do not think that changes the definition of the character that has been given in these cases heretofore.

There are statements in two cases, *Reynolds Tobacco Co.* v. *Carson*, 187 Tenn. 157, 213 S. W. (2d) 45, and *American Bemberg Corp.* v. *Carson*, 188 Tenn. 263, 219 S. W. (2d) 169, to the effect that the taxes levied upon the privilege of "doing business," but we do not think that the Court in those two cases, intended to change the definition of the statutes as given in prior cases, because such a distinction was not an issue in either case.

It would seem, therefore, that the incidence or impact of these taxes has long ago been placed by the Court of this State upon the privilege of doing business in *corporate form,* and not merely on the *doing of business.* Thus the Spector case is to be distinguished, and it would seem that if the Supreme Court, as it did in the Spector case, and in *Memphis Natural Gas Co.* v. *Stone*, 335 U. S. 80, 68 S. Ct. 1475, 92 L. Ed. 1832, as well as other cases, has taken the State Court's finding as to the incidence of the tax, then in this case it should do the same thing.

It is, therefore, our conclusion that the Spector case is not controlling in the instant case.

That being true, we are of opinion that the validity of these taxes has already been adjudicated in principle by

this Court in *Memphis Natural Gas Co.* v. *McCanless,* 180 Tenn. 695, 177 S. W. (2d) 843. That suit was to recover the taxes for 1939 to 1942, and was brought after the present complainant's predecessor had dissolved its joint enterprise in 1939, and after the decision in *Memphis Natural Gas Company* v. *Beeler,* 315 U. S. 649, 62 S. Ct. 857, 86 L. Ed. 1090. The insistence was made by complainant that no part of its business was local or interstate.

Judge Green pretermitted the question just raised, and after quoting from the Beeler case, he said at page 703 of 180 Tenn., at page 846 of 177 S. W. (2d)

"From the foregoing it seems evident that the Supreme Court ruled that if, as insisted, all complainant's business was interstate and it was engaged in no joint enterprise of distribution, nevertheless it was still liable for the tax. In other words, treating the imposition as reaching earnings from interstate commerce, nevertheless the tax was valid." See, also, 180 Tenn. at page 705, 177 S. W. (2d) at page 847.

In the briefs, there is considerable argument as to where this foreign corporation that was qualified to do business in Tennessee derived its powers, that is, from the State of its original creation or the State of Tennessee, and complainant insists that this State could not exclude it from pursuing an interstate business within the State. We do not deem it necessary to encumber this opinion at any length on the point, but the fact is that this foreign corporation qualified voluntarily in this State, and acquired the right to operate herein as a corporation, does operate as such and receives the benefits enjoyed by all domestic corporations; hence should bear equal burdens. There has been no effort to exclude it from pursuing an interstate business within the State. Section 4127 of the Code of Tennessee, provides:

"When such foreign corporation shall have duly complied with the provisions of the foregoing sections, then it shall be entitled to all the privileges, rights, immunities, and subject to the liabilities of corporations organized and chartered under the laws of this state."

These taxes are non-discriminatory in that they apply to all corporations alike which have been granted a franchise or privilege to do business in this State in corporate form. In fact, in the Spector case, supra, 71 S. Ct. at page 512, the Court said:

"The courts of Connecticut have held that the tax before us attaches solely to the franchise of petitioner to do interstate business. The State is not precluded from imposing taxes upon other activities or aspects of this business which, unlike the privilege of doing interstate business, are subject to the sovereign power of the State. Those taxes may be imposed although their payment may come out of the funds derived from petitioner's interstate business, provided the taxes are so imposed that their burden will be reasonably related to the powers of the State and nondiscriminatory."

The construction we have put upon the Spector case and the distinction we have made is in accord with that made in *Great Lakes Pipe Line Co. v. Oklahoma Tax Commission*, 204 Okl. 518, 231 P. (2d) 655, 661. In the course of the opinion, the Court referred to the Spector case, and said:

"In that case the right to exist was not taxed, but only the privilege of carrying on or doing business in the State of Connecticut, and there was no intrastate business transacted by Spector Motor Service, as it

had not qualified to do intrastate business; but Great Lakes Pipe Line is so qualified in Oklahoma.''

Although qualified to do business in Oklahoma, it made no deliveries of products in Oklahoma, and carried on no intrastate transportation, but it did exercise the right of eminent domain and used the Courts of Oklahoma.

We are, therefore, of the opinion that the Chancellor was in error in holding the taxes invalid. The decree below is reversed and the judgment will be entered dismissing the complainant's suit with costs of the Chancery Court and of appeal.