Texas Gas Transmission Corporation, Appellant,

*v.*

Z. D. Atkins, etc., Appellee.

(*Nashville,* December Term, 1958.)

Opinion filed September 3, 1959.

496

EDWARD P. RUSSELL and J. MARTIN REGAN, Memphis, for appellant.

GEORGE F. McCANLESS, Attorney General, ALLISON B. HUMPHREYS, Solicitor General, MILTON P. RICE, Assistant Attorney General, for appellee.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

These are four suits for the purpose of recovering the franchise and excise taxes paid for the years 1955 and 1956 by Texas Gas Transmission Corporation, hereinafter referred to as Texas. Said taxes were collected under T.C.A. secs. 67-2701 et seq. and 67-2901 et seq. The Chancellor dismissed the bills and hence this appeal.

These suits really are a continuation of the unsuccessful efforts heretofore of complainant, or its predecessor, Memphis Natural Gas Company, to prevent the payment of these taxes under the claim of exemption by reason of the commerce clause of the Federal Constitution, art. 1, sec. 8, cl. 3. The prior suits are: *Memphis Natural Gas Co. v. Pope,* 178 Tenn. 580, 161 S.W.2d 211, affirmed by the Supreme Court of the United States in *Memphis Natural Gas Co. v. Beeler,* 315 U.S. 649, 62 S.Ct. 857, 86 L.Ed. 1090; *Memphis Natural Gas Co. v. McCanless,* 180 Tenn. 695, 177 S.W.2d 843, *certiorari* denied by Supreme Court of United States 323 U.S. 785, 65 S.Ct. 275, 89 L.Ed. 626; *Texas Gas Transmission Corp. v. Atkins,* 197 Tenn. 123, 270 S.W.2d 384, petition for *certiorari* denied by Supreme Court of the United States 348 U.S. 883, 75 S.Ct. 125, 99 L.Ed. 694.

The facts in the present case are substantially the same as those stated in the Atkins case, supra, except that following the final decision of the United States Supreme Court affirming this Court, Texas withdrew its corporate charter from Tennessee. It should be stated also that in 1955 and 1956 respectively its properties in Tennessee were assessed at $8,000,000 and $8,200,000, on which it has paid taxes to relevant counties and cities; but as the State does not impose a property tax, none has been paid to the State.

It also appears that Texas maintains two compressor stations along its line of 405 miles length in Tennessee, maintains two crews of workmen to service the line, has a substantial staff of administrative employees in the City of Memphis, delivers gas as described in the prior case; further, it holds 38 highway permits, 21 county permits and 6 county drainage permits.

Texas is not engaged in intrastate commerce in Tennessee, but in interstate commerce only.

In 1955 the Legislature by Chs. 185 and 183 amended respectively the excise and franchise tax laws by adding to each the following:

"Every such taxable entity organized and existing under and by virtue of the laws of this or any other state, territory or country, or organized and existing without any specific statutory authority, now or hereafter doing business within this state, without domesticating or qualifying to do business in this state, or while its charter is forfeited, revoked or suspended, shall as a recompense for the protection of its local activities and as compensation for the benefits it receives from doing business in Tennessee, pay the tax imposed by this article."

The insistence in behalf of Texas, as we understand it from the brief, is that it is engaged solely in interstate commerce; that it receives no protection of its properties in this State nor protection of its activities other than the normal protection given to properties and business activities in general in the State; that it has received no benefits from doing business in the State other than such benefits as a corporation solely engaged in inter-

state business receives. Further, it is insisted that the expression "doing business" in the 1955 amendment to the franchise and excise tax statutes has reference only to intrastate business and hence has no application to Texas doing only an interstate business. That if it be applied to interstate business, then under the case of *Spector Motor Service, Inc. v. O'Connor,* 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573, and many other cases, the tax would be invalid. It is further and particularly insisted and stressed that the words "local activities" in the 1955 amendment has long been considered as synonymous with the expression "intrastate commerce". Further, that if on the other hand the expression "local activities" is taken in a broad sense to mean all of the acts which take place in Tennessee, then the language would run afoul of the commerce clause.

Referring first to the question of the meaning of "local activities", we think that counsel perhaps fails to consider this distinction, to-wit, that while all intrastate commerce is a local activity, all local activity is not necessarily intrastate commerce. There are many cases from the highest court of the land to the effect that local incidents may be a sound basis for taxation where they can be sufficiently separated from interstate commerce. One of the latest cases so holding and citing others in *Memphis Natural Gas Co. v. Stone,* 335 U.S. 80, 86, 68 S.Ct. 1475, 92 L.Ed. 1832.

Therefore, the fact alone that Texas is engaged solely in interstate commerce is not determinative. In the case just cited the Memphis Natural Gas Company, the predecessor of Texas, was engaged in almost identically the same operation as is the case now in Tennessee and it

was not qualified to do business in the State of Mississippi and was doing only an interstate business. Therefore, without laboring the point, it seems to us that regardless of the argument made in behalf of Texas with reference to the so-called peculiar statutory definition of "doing business" as set out in the Mississippi statute, that case settles the question as to whether or not these local activities are sufficiently severable to be taxable.

█ █ We do not think there is any merit in the insistence that the 1955 amendment applies only to corporations doing an intrastate business. The Legislature must be presumed not to have intended to do a useless and vain thing; the corporations doing an intrastate business were already subject to taxation without the 1955 amendment.

We are of opinion that the 1955 amendment does not attempt to tax interstate commerce; the language is reasonably clear to the effect that it describes the taxable entity as being one not organized or doing business under the authority of the State of Tennessee, but the tax is levied as a recompense for the protection of the local activities, which are substantial, of that entity as compensation for the protection it receives for its local activities which are the benefits it receives from doing business in Tennessee.

█ Finally, we think that any doubt about whether these taxes are *direct* taxes on interstate commerce, or are discriminatory or subject to multiple taxation, etc., has been resolved against that idea by the full expression of Chief Justice Green in *Memphis Natural Gas Co. v. McCanless*, 180 Tenn. 695, beginning on page 702 and going through 705 to the last full paragraph, 177 S.W.2d

843. The same is incorporated herein by reference but need not be copied.

It is interesting to note that in the recent case of *Northwestern States Portland Cement Co. v. State of Minn.*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (two cases), the Supreme Court held that the net income from the interstate operation of a foreign corporation may be subjected to State taxation provided that the levy is not discriminatory and is properly apportioned to local activities within the taxing State forming a sufficient nexus to support the same, and that the imposition of such tax did not violate the commerce clause or the due process clause of the Federal Constitution, Amend. 14. The statement of facts in those cases show substantial local activities but no intrastate commerce.

On page 365 of 79 S.Ct., the Spector Motor Service case, supra, is referred to and distinguished and with reference to the comment in the footnote in the Spector case to *Memphis Natural Gas Co. v. Beeler*, 315 U.S. 649, 62 S.Ct. 857, 86 L.Ed. 1090, referred to by Chief Justice Green in *Memphis Natural Gas Co. v. McCanless*, supra, the court said:

"Therefore, with the exception of Beeler, heretofore mentioned, the Court made no reference to the net-income-tax cases which control here. We do not construe that reference as intended to impair the validity of the Beeler opinion."

The decree of the Chancellor is affirmed.