MID-VALLEY PIPELINE COMPANY, Appellant,

*v.*

DONALD R. KING, Commissioner of Revenue, Appellee.

MID-VALLEY PIPELINE COMPANY, Appellant,

*v.*

THOMAS D. BENSON, Commissioner of Revenue, Appellee.

431 S.W.2d 277.

(*Nashville*, December Term, 1967.)

Opinion filed August 23, 1968.

Laughlin, Watson, Garthright & Halle, Memphis, for appellant, M. E. Newcomer, and H. Vincent E. Mitchell, Cleveland, Ohio, of counsel, Squire, Sanders & Dempsey, Cleveland, Ohio, J. Martin Regan, Memphis, of counsel.

George F. McCanless, Attorney General, and Milton P. Rice, Deputy Attorney General, Nashville, for appellees.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

Three cases filed by Mid-Valley Pipeline Company against the Commissioner of Revenue were consolidated for trial. The suits sought recovery of franchise and excise taxes paid under protest for the years 1963, 1964, 1965 and 1966. By a supplemental bill to the original bill filed to recover the taxes for the years 1963 and 1964, Mid-Valley sought recovery of penalties paid subsequent to payment of the taxes for those years.

Complainant, Mid-Valley, alleged it was a common carrier engaged in the transportation of crude oil in continuous flow by means of a single pipeline extending from points south of the southern border to receiving points beyond the northern border of Tennessee.

It was further alleged complainant was engaged solely in interstate commerce in this State; and that it was not engaged in any local activities within the State which were sufficiently separate from its interstate operations to be made the subject of franchise or excise taxes.

It was then alleged the imposition of franchise and excise taxes upon complainant pursuant to Chapters 27 and 29 of Title 67, T.C.A., would constitute a violation of the due process and commerce clauses of the Constitution of the United States.

In the supplemental bill, complainant alleged the penalties were illegally exacted because the taxes and interest thereon, upon which the penalties were assessed, were paid prior to expiration of a lawfully granted extension of time.

The Chancellor heard the matters upon the bills, answers of defendants, the deposition of John E. Triece, Assistant Secretary and Manager, Tax and Insurance Department of Mid-Valley, and certain exhibits to his testimony.

The Chancellor held the suit seeking a recovery of franchise and excise taxes should be dismissed upon authority of *Texas Gas Transmission Corporation v. Atkins*, 205 Tenn. 495, 327 S.W.2d 305 (1959) and *Memphis Natural Gas Company v. Stone*, 335 U.S. 80, 68 S.Ct. 1475, 92 L.Ed. 1832, (1948). He found, however, complainant was entitled to recover the penalties paid on the 1963 and 1964 taxes. We affirm the decree of the Chancellor.

Both parties prayed and were granted an appeal to this Court. However, defendants have not filed an assignment of error and brief in support thereof. Consequently,

we must treat defendants' appeal as having been abandoned. Rule 15(2), Rules of the Supreme Court.

Complainant has assigned four assignments of error which present the question of whether Tennessee may constitutionally exact franchise and excise taxes from complainant under Chapters 27 and 29 of Title 67, T.C.A., for the years involved during which complainant was engaged solely in the business of transporting through Tennessee crude oil from and to points outside of the State.

The facts, as found by the Chancellor, are undisputed. Complainant is an Ohio corporation with its principal office in Longview, Texas, and is engaged in the business of transporting crude oil through a pipeline from points in Texas, Louisiana and Arkansas to points in Kentucky and Ohio.

The total length of the pipeline is 1,007.6 miles of which 153.7 miles is in Tennessee. The pipeline enters Tennessee near the midpoint of the Mississippi-Tennessee boundary line and exits on the Kentucky-Tennessee boundary at a point north of Clarksville. Its operations are under the jurisdiction of the interstate commerce commission.

Complainant owns properties in Tennessee consisting of a right-of-way across the State, fifty feet in width; several parcels of land upon which two pumping stations and seven microwave towers are located; two station wagon automobiles and miscellaneous equipment for right-of-way maintenance and fire fighting. It has contracts with two Tennessee Electric Membership Cooperatives for furnishing power to operate complainant's pumping stations.

Complainant has four employees who reside in this State. Two of the employees are pumping station foremen and two are communication technicians. One pumping station foreman lives in Hornsby and the other in Denver with their respective families. Each is furnished a Company owned house in which to live situated on Company owned property upon which the pumping stations stand.

One of the communication technicians resides in Jackson and the other in Clarksville. Each is furnished a station wagon. The technician living at Jackson maintains four microwave towers and the one residing in Clarksville maintains three towers.

The pumping stations are controlled from a central control room in Longview, Texas. This control room monitors the entire pipeline system electronically by receiving signals from the microwave towers along the pipeline. Incidental maintenance work for the pumping stations and right-of-way in Tennessee is provided by Company employees who reside in Oxford, Mississippi, and brought into the State when their services are needed. Incidental technicians are also brought into this State when needed.

Complainant, a foreign corporation, has not qualified to do business in this State. However, it has carried on its business activities within the State in corporate form, suing and being sued in its corporate name, contracting for services and acquiring title to property in its corporate capacity.

Complainant neither accepts, stores, delivers, nor sells oil in Tennessee.

The Tax Commissioner assessed the excise and franchise taxes under T.C.A. Sections 67-2701 et seq., and

T.C.A. Sections 67-2901 et seq., respectively. Section 27-2701 authorizes the levy of an excise tax on corporate earnings, equal to five per cent of the net earnings from business done within the State. Section 67-2904 authorizes a corporate franchise tax, "of fifteen (15¢) cents on the One Hundred Dollars ($100.00), or major fraction thereof, of the issued and outstanding stock, surplus and undivided profits," of each taxable corporation during each taxable year.

By Chapters 185 and 183, Public Acts of 1955, the Legislature amended respectively the excise and franchise tax statutes by adding to each the following:

"Every such taxable entity organized and existing under and by virtue of the laws of this or any other state, territory or country, or organized and existing without any specific statutory authority, now or hereafter doing business within this State, without domesticating or qualifying to do business in this State, or while its charter is forfeited, revoked or suspended, shall as a recompense for the protection of its local activities and as compensation for the benefit it receives from doing business in Tennessee, pay the tax imposed by this Chapter."

Complainant is subject to excise and franchise taxation, if at all, under the provisions of this paragraph.

Complainant, by its first assignment of error, insists the Chancellor erred in holding the taxes were validly imposed on the theory they were imposed upon complainant's local activities. Complainant argues this was prejudicial because complainant conducted no local, or intrastate, activities which could form the basis for exaction of the taxes.

■ The franchise and excise taxes are upon the privilege of engaging in business in corporate form in Tennessee, and not merely on the doing of business. *Texas Gas Transmission Corporation v. Atkins,* 197 Tenn. 123, 270 S.W.2d 384 (1954), certiorari denied 348 U.S. 883, 75 S.Ct. 125, 99 L.Ed. 694; *Texas Gas Transmission Corporation v. Atkins,* 205 Tenn. 495, 327 S.W.2d 305 (1959).

■ Foreign corporations, doing business in this State without domesticating or qualifying to do business in Tennessee, shall, as a recompense for the protection of their local activities and as compensation for the benefits they receive from doing business in Tennessee, pay franchise and excise taxes. T.C.A. Sections 67-2701 and 67-2902; *Texas Gas Transmission Corporation v. Atkins,* 205 Tenn. 495, 327 S.W.2d 305, supra.

■ The fact complainant is and has been solely engaged in interstate commerce within this State is not determinative. *Texas Gas Transmission Corporation v. Atkins,* 205 Tenn. 495, 327 S.W.2d 305, supra.

■ Local incidents or activities may be a basis for a franchise or excise tax, measured by a properly apportioned net income of a foreign corporation engaged solely in interstate commerce, provided the local activities can be separated from interstate commerce. *Texas Gas Transmission Corporation v. Atkins,* 205 Tenn. 495, 327 S.W.2d 305, supra; *Memphis Natural Gas Company v. Stone,* 335 U.S. 80, 68 S.Ct. 1475, 92 L.Ed. 1832 (1948); *Northwestern States Portland Cement Company v. State of Minnesota,* 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959).

In the recent case of *Roadway Express, Inc. v. Director, Division of Tax.*, 50 N.J. 471, 236 A.2d 577 (1967), certiorari denied by U.S. Supreme Court April 29, 1968, 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 276, the Court upheld a state franchise tax, although Roadway was doing exclusively interstate business in New Jersey. The provision of the New Jersey tax is as follows:

"Every domestic or foreign corporation which is not hereinafter exempted shall pay an annual franchise tax for the year one thousand nine hundred and forty-six and each year thereafter, as hereinafter provided, for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State. And such franchise tax shall be in lieu of all other State, county or local taxation upon or measured by intangible personal property used in business by corporations liable to taxation under this act."

In upholding the tax, the Supreme Court of New Jersey analyzed the decision in the case of *Spector Motor Service, Inc. v. O'Connor*, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951), in the light of the later decisions of the United States Supreme Court in *Railway Express Agency, Inc. v. Commonwealth of Virginia*, 358 U.S. 434, 79 S.Ct. 411, 3 L.Ed. 450 (1959); *Northwestern States Portland Cement Company v. State of Minnesota*, supra; and *General Motors Corporation v. Washington*, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964), and then said:

"On the thesis of the progression of rationale shown by these decisions, viewed in the light of our statutory provisions, we conclude that it is correct to say that

the New Jersey corporate business tax, by reason of the alternative bases set forth in the Act, is not imposed upon foreign corporations merely or solely for the privilege of doing interstate business in New Jersey. We think also there is no longer necessarily any conclusive magic in the denomination of a tax as a 'franchise' tax or by another label. We believe validity will now be judged, broadly speaking and in the absence of Congressional action, on whether it is a fairly apportioned, nondiscriminatory means of requiring such a corporation to pay its just share of the cost of state government upon which it necessarily relies and by which it is furnished protection and benefit. We are of the opinion that the New Jersey tax meets that test as applied to the taxpayers here involved.

"It remains established that a tax on an exclusively interstate business verbally based solely on the privilege of doing such business in the state is constitutionally forbidden. We therefore construe that basis of New Jersey's tax to be inapplicable to taxpayers like those involved here. Since a tax may not exclude such a corporation from doing such business within it, it may not exact an impost on the thesis of a condition of entry therein. More technically speaking, it is our view that the New Jersey tax is validly applicable to these taxpayers on the foundation of other bases expressed in the statute. The first is that the tax is expressly in lieu of 'all other State, county or local taxation upon or measured by intangible personal property' of a foreign corporation, which kind of a tax we conceive could be validly imposed on a corporate entity of another state conducting an exclusively in-

terstate business here. We believe the tax is additionally sustainable as a levy 'for the privilege of * * * employing or owning capital or property, or maintaining an office, in this State,' if not also 'for the privilege of * * * exercising its corporate franchise' here. * * * We think such privileges are sufficiently different from that of 'doing' interstate business so that they are, in the sense stated in Spector, aspects of such business subject to the sovereign power of the state.''

In the case of *Memphis Natural Gas Company v. Stone,* supra, the Gas Company piped gas across the State of Mississippi. It did no intrastate business in that State. It was not qualified to do business in Mississippi, had no office in the State and no employees other than those necessary to maintain the pipeline. It did deliver gas to one customer in the State at wholesale, an activity which has, without exception, been held to constitute interstate commerce.

Mississippi imposed a franchise or excise tax of $1.50 per $1,000.00 of the capital used, invested or employed in Mississippi, upon domestic corporations; and, * * * upon every corporation * * * organized and existing under and by virtue of the laws of some other state, territory or country, or organized and existing without any statutory authority now, or hereafter, doing business within this State * * *.''

The Supreme Court of Mississippi concluded the statute did not attempt to tax interstate commerce. The Court said: ''* * * The levy is an exaction which the State requires as a recompense for the protection of lawful activities carried on in this State by the corporation, foreign or domestic, activities which are inci-

dental to the powers and privileges possessed by it by the nature of its organization—here the local activities in maintaining, keeping in repair and otherwise in manning the facilities of the system throughout the one hundred thirty-five miles of its line in this State.''

In affirming the Supreme Court of Mississippi, the Supreme Court of the United States said:

''We think that the State is within its constitutional rights in exacting compensation under this statute for the protection it affords the activities within its border. Of course, the interstate commerce cannot be conducted without these local activities. But that fact is not conclusive. These are events apart from the flow of commerce. This is a tax on activities from which the State, not the United States gives protection and the State is entitled to compensation when its tax cannot be said to be an unreasonable burden or a toll on the interstate business.''

■ ■ The record in the instant case clearly shows complainant has and is employing or owning capital or property in this State and exercising its corporate franchise within the State. It maintains its right-of-way and other valuable properties located in this State in its corporate capacity. It has and is using our courts to vindicate its rights.

Such local activities, although incidental to the conduct of interstate commerce, are taxable under the foregoing authorities.

It is next insisted by complainant the taxes cannot be levied validly because it is an undomesticated foreign corporation, doing an exclusive interstate business in

Tennessee, and constitutes an exaction for the privilege of engaging solely in interstate commerce which violates the commerce clause of the United States Constitution.

Complainant cites a number of decisions by the Supreme Court of the United States which it insists supports this argument. The leading case is that of *Spector Motor Service, Inc. v. O'Connor,* supra, upon which complainant primarily relies.

This Court in the case of *Texas Gas Transmission Corporation v. Atkins,* 205 Tenn. 495, 327 S.W.2d 305, supra, held.

"We are of opinion that the 1955 amendment does not attempt to tax interstate commerce; the language is reasonably clear to the effect that it describes a taxable entity as being one not organized or doing business under the authority of the State of Tennessee, but the tax is levied as a recompense for the protection of the local activities, which are substantial, of that entity as compensation for the protection it receives for its local activities which are the benefits it receives from doing business in Tennessee."

In the case of *Texas Gas Transmission Corporation v. Atkins,* 197 Tenn. 123, 270 S.W.2d 384, supra, the Court said:

"It is our conclusion that the crux of the Spector case is that the Supreme Court accepted as its basic predicate the construction placed upon the statute involved by the highest Court of Connecticut, which held that the tax was levied upon the right to do interstate business. The right to do business in corporate form was not involved in the case.

"The Tennessee franchise tax, however, is imposed upon 'the privilege of engaging in business in corporate form in this State.'

"The excise tax, although not expressly so providing, has likewise been construed."

Nevertheless, complainant insists these two cases are not controlling because the taxpayer in both cases conducted numerous activities in this State capable of being adjudged "local activities" which are not conducted by complainant.

While this is true we have hereinabove pointed out the local activities which complainant has and is conducting in Tennessee, which we think are substantial and taxable under the 1955 amendments.

Finally, it is argued the Chancellor was in error in upholding the validity of the taxes on authority of *Memphis Natural Gas Company v. Stone,* supra. It is insisted later decisions of the Supreme Court of the United States have limited the decision in that case strictly to its peculiar facts, not present in the case at bar. Complainant engages in the same local activities as set out in the Stone case, except in one instance. It does not sell or deliver oil in Tennessee; whereas, Memphis Natural Gas Company did deliver gas to one customer at wholesale in Mississippi.

In the very recent case of *Roadway Express, Inc. v. Director, Division of Tax.,* supra, the same principle as announced in the Stone case was reaffirmed.

The privileges taxed in Spector under the Connecticut statute were confined to those "of carrying on or doing business within the state." Mr. Justice Burton, speaking

for the majority, held since the Supreme Court of Connecticut had construed the statute as a tax solely on Spector's franchise to do interstate business, this "channel" through which the State sought to make interstate commerce pay its way was unconstitutional.

However, the opinion specifically pointed out, "the State is not precluded from imposing taxes upon other activities or aspects of this business which, unlike the privilege of doing interstate business, are subject to the sovereign power of the State. Those taxes may be imposed although their payment may come out of the funds derived from petitioner's interstate business, provided the taxes are so imposed that their burden will be reasonably related to the powers of the State and nondiscriminatory."

The taxes are imposed upon the privilege of doing business in corporate form and are nondiscriminatory as they apply to all foreign corporations doing business in this State in corporate form.

All assignments of error are overruled and the decree of the Chancellor is affirmed. Complainant will pay the costs.

BURNETT, CHIEF JUSTICE, and DYER, JUSTICES, concur.

CRESON and HUMPHREYS, JUSTICES, not participating.