228 So.2d 718 (1969)
COLONIAL PIPELINE COMPANY, Plaintiff-Appellee,
v.
Ashton J. MOUTON, Collector of Revenue, Defendant-Appellant.
No. 7788.
Court of Appeal of Louisiana, First Circuit.
November 17, 1969.
Rehearing Denied December 22, 1969.
*719 Emmett E. Batson, Baton Rouge, for defendant-appellant.
R. Gordon Kean, Jr., of Sanders, Miller, Downing & Kean, Baton Rouge, for plaintiff-appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
The Collector of Revenue for the State of Louisiana (Collector) appeals from a judgment of the district court which ordered the refund to Colonial Pipeline Company (Colonial) of franchise taxes paid under protest by the latter.
The trial judge held that Colonial was engaged in interstate commerce and that the interpretation by the Collector of L.R. S. 47:601 that authorized the imposition of the instant tax was unconstitutional as violative of Article 1, Section 8, Clause 3 (Commerce Clause) of the United States Constitution.
The Collector first appealed to the Louisiana Supreme Court on the constitutional question. The Supreme Court[1] decided that it was the application and not the validity of L.R.S. 47:601 that was questioned and that it was without initial appellate jurisdiction and transferred the matter to us.
For reasons hereinafter stated we are of the opinion that the findings of fact of the trial judge and his application of the law relative thereto are proper and his decision should be affirmed.
The facts in this case are not in dispute. Colonial is a Delaware corporation with its principal offices in Atlanta, Georgia. Its only business is the operation of a common carrier pipeline system extending from Texas to New Jersey. It transports only refined liquid petroleum products owned by others. At the time of the trial on the merits, Colonial's system of main and lateral lines consisted of a total of 3,148 miles of which only 217.19 miles are located in Louisiana. On May 9, 1962, Colonial qualified to do business in Louisiana and has remained qualified since that time. Also in 1962, Colonial commenced the construction of that portion of its facilities located in Louisiana. These activities included the obtaining of right of ways, both voluntarily and by expropriation, surveys, and technical inspection of the work of the contractors engaged in the actual construction of the facilities.
*720 The tax now sought to be refunded was imposed by the Collector in 1963 on Colonial's activities for the year 1962.
The Collector claims, first, that the activity of Colonial incidental to the construction of its facilities in Louisiana in 1962 clearly subjected it to the tax in question; and secondly, in the alternative, that other activities of Colonial such as its qualification to do business in Louisiana, the use of its courts in litigation, the operation of various pumping stations are incidents that bring Colonial within the purview of L.R.S. 47:601.
On the other hand, Colonial takes a broader view and maintains that L.R.S. 47:601 by its very language imposes a tax on the privilege of doing business in the State of Louisiana. Accordingly, it contends that the Collector's interpretation of the statute and the imposition of the tax thereunder have long been considered illegal and unconstitutional and that such efforts in the past to enforce such a tax on strictly interstate concerns have been struck down by the federal and state courts.
The pertinent part of L.R.S. 47:601 reads as follows:
"Every domestic corporation and every foreign corporation, exercising its charter, authorized to do or doing business in this state, or owning or using any part or all of its capital or plant in this state, subject to compliance with all other provisions of law, except as otherwise provided for in this chapter, shall pay a tax * * *. The tax levied herein is due and payable for the privilege of carrying on or doing business, the exercising of its charter or the continuance of its charter within this state, or owning or using any part or all of its capital or plant in this state." (Emphasis ours).
With this statute in mind, we now turn our attention to other statutes similar in nature which have been held a valid or an invalid exercise of state authority.
We must first start with the well settled doctrine that Congress has the exclusive power under the Commerce Clause to regulate interstate commerce and even where the Congress has failed to act on the subject in the area of taxation, the power granted to it under the Commerce Clause requires that interstate commerce be free from any direct restrictions or impositions by the states. Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421, 67 A.L.R. 2d 1292 (1959). The Commerce Clause not merely provides authorization to the Congress for the enactment of laws for the protection and encouragement of commerce among the states, it is in itself a limitation upon the power of the states by prohibiting any interference by the states. Southern Pacific Co. v. Arizona, 325 U.S. 761, 65 S. Ct. 1515, 89 L.Ed. 1915 (1945).
All taxes against a company engaged exclusively in interstate commerce are not invalid. A state may very properly require the payment of ad valorem taxes[2] (Postal Telegraph Cable Co. v. Adams, 155 U.S. 688, 15 S.Ct. 268, 39 L.Ed. 311); require the payment of a use tax[3] (Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814); and the payment of an income tax[4] (properly apportioned under Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421, 67 A.L.R. 2d 1292).
However, in the area of franchise or excise taxes imposed by a state on a corporation engaged in interstate commerce, as a general rule, is invalid if the tax is on the "privilege" of doing business. On the other hand, the tax is valid if it is *721 determined that it is a tax on "local activities" or an "in lieu" tax. In Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265, the court held that it is a question of law and fact and that the task of scrutinizing is the task of drawing lines and placing the facts on the proper side of the line which in turn dictate the categorization of the statute and place it in its proper niche, i. e., valid or invalid. The decisive issue in cases of this type turns on the operating incidence of the tax. General Motors Corporation v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430.
The Collector first contends that the building of a completely new pipeline is an intrastate activity and remains so until the line is sufficiently completed to permit the transit of goods in interstate commerce. As authority he cites 15 Am. Jur.2d 665. We have examined the authorities relied upon and find that the cases therein cited involve facts inapposite to the facts presented in the instant matter. Interstate commerce is distinguishable from building and construction work. Construction in itself is local in nature. However, it is the contractor who is engaged in construction and not necessarily the owner. This is particularly true as in the instant matter where Colonial, chartered as a common carrier, licensed as such, and under the exclusive control of the Interstate Commerce Commission, contracted out all of the work for the construction of its facilities in Louisiana. Under these facts it is the contractor who is engaged in intrastate activity and not the owner. The trial judge found as a fact that:
"* * * Anything and everything done by this corporation since its original entry into the State of Louisiana has been purely incidental to its business as a common carrier engaged solely in interstate commerce."
The record fully supports this conclusion.
We now turn to the alternative position of the Collector and consider the case of Memphis Natural Gas Co. v. Stone, 335 U.S. 80, 68 S.Ct. 1475, 92 L.Ed. 1832 (1948), a decision he relies very heavily upon. In Memphis Natural Gas, the Mississippi tax at issue[5] was interpreted by the Mississippi Supreme Court as a tax not levied upon the privilege of doing business in the State of Mississippi and was specifically held to be a tax levied upon "the local activities in maintaining, keeping in repair and otherwise in manning the facilities" of the tax payer in the State of Mississippi. The United States Supreme Court felt bound by the interpretation placed on the statute by the highest court of that state. The incidence of the tax was upon "local activities" rather than upon an interstate business. Colonial very aptly points out that the Supreme Court of Louisiana has held that the Legislative intent of the Louisiana franchise tax is to "levy an annual franchise tax on all corporations [for the privilege] of doing business in [that] state". Conway v. Lane Cotton Mills Co., 178 La. 626, 152 So. 312 (La.Sup.Ct., 1933). See also Arkansas Fuel Oil Corp. v. Fontenot, 225 La. 166, 72 So.2d 465 (La.Sup.Ct., 1954).
In Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 603, 71 S.Ct. 508, 95 L. Ed. 573 (1951), the State of Connecticut sought to impose a corporation franchise tax measured by the net income from business transactions within the state. Plaintiff was an interstate common carrier by truck organized under the laws of Missouri with its principal place of business in Illinois. The United States Supreme Court held that no matter how fairly the tax was apportioned to business done within the state, it was a franchise tax based upon the privilege of doing business in the state and could not be constitutionally imposed on the plaintiff. In discussing Spector Motors, it must be remembered that the principal concern was the imposition of a franchise tax and not a reasonably apportioned income tax. In Spector Motors, the court found that there were no local incidents but *722 that it was an unequivocable tax on the privilege of doing business in that state.
In General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct 1564, 12 L.Ed.2d 430 (1964), the court found that the tax was levied on incidents of a substantial local business in the State of Washington and was constitutionally valid. In the case at hand, the trial court found that Colonial had no substantial local business in Louisiana, a finding of fact that is fully supported by the record. Colonial would pick up products in Louisiana and would discharge products in Louisiana but it never discharged products in Louisiana that were picked up in Louisiana.
In our sister State of Alabama, in Ideal Cement Co. v. United Gas Pipeline Co., 5 Cir., 282 F.2d 574, the validity of a License Ordinance of Mobile, Alabama, was at issue. The incidence of the tax was upon "the keeping, engaging in or carrying on business of any nature," and upon the "entering the City of Mobile to do business". The United States Court of Appeal, Fifth Circuit, concluded that the tax in question was "upon the privilege of engaging in interstate commerce" and not upon "local transactions" and was therefore stricken with constitutional infirmity.
In Railway Express Agency, Inc. v. Virginia, 358 U.S. 434, 79 S.Ct. 411, 3 L.Ed.2d 450, the "franchise tax" was held to be an "in lieu" tax upon intangibles or rolling stock and thus likened unto an approved property tax. The court stated that the wording of the statute left no room for doubt that it was the intention of the General Assembly of Virginia to levy a tax on plaintiff's intangibles. The opinion deals exhaustively with the jurisprudence on the subject, the fine line of reasoning wherein cases are distinguished and the taxes are either permitted or denied with due deference to "* * * the use of magic words or labels validating an otherwise invalid tax * * *." The Supreme Court had on a previous occasion stricken a Virginia tax because it was imposed solely upon the privilege of doing business.
The Collector places great emphasis on the fact that Colonial qualified to do business in Louisiana and as a result thereof acquired certain privileges that it would not otherwise have obtained. Accordingly, the Collector reasons that these privileges are local activities which subjects Colonial to a franchise tax. The Collector argues that as a result of Colonial's qualification to do business in Louisiana it is relieved of the necessity of proving that it is engaged exclusively in interstate commerce as a condition precedent to filing suit in a Louisiana court; that it is permitted to choose the venue of suits brought against it by designating a principal office in the state; that it has the authority to name an agent for the service of process; and, that it became entitled to exercise eminent domain in Louisiana. This question has never been squarely presented to an appellate court of this state, to our knowledge, on any prior occasion. However, we are of the opinion that these privileges are not of a sufficient local nature as to subject Colonial to a franchise tax. The privileges above enunciated are incidental to and in the furtherance of Colonial's primary object of transporting petroleum products in interstate commerce. The mere qualification to do business does not, per se, subject Colonial to the subject tax. This result was reached in Ozark Pipe Line Corp. v. Monier, 266 U.S. 555, 45 S. Ct. 184, 69 L.Ed. 439, where a Missouri tax was held improperly assessed against a foreign corporation engaged in interstate commerce. The same result was reached concerning an Alabama statute in Anglo-Chilean Nitrate Sales Corp. v. Alabama, 288 U.S. 218, 53 S.Ct. 373, 77 L.Ed. 710, and State of Alabama v. Plantation Pipeline Company, 265 Ala. 69, 89 So.2d 549, certiorari denied, 325 U.S. 943, 77 S.Ct. 263, 1 L.Ed.2d 237. Of similar import is *723 the case of Sinclair Pipeline v. Carpenter, 10 Ill.2d 300, 140 N.E.2d 115, where the Supreme Court of Illinois had a like question presented to it.
Now this brings us back to the issue at hand and the particular wording of L.R.S. 47:601 and that wording, to-wit:

"* * * The tax levied herein is due and payable for the privilege of doing business, * * *." (Emphasis ours)
However inclined we might be to endeavor to differentiate between the use of magic words or labels, reality brings us back to the stark wording of the statute. Even Colonial concedes that the State of Louisiana may levy a tax "in lieu" of other taxes, on tangibles or intangibles (good will), or "local incidents" or "local activities" but this is not the issue before us.
We are required to take the language of the statute as we find it and interpret it based on the stated "operating incidence" of the tax. This brings us right back to the undeniable fact that the statute makes no pretense of being levied upon "local incidents" or "local activities" but on the contrary is levied squarely upon the privilege of engaging in business in Louisiana.
Also, applicable here, is the language of this court in Higgins, Inc. v. Walker, 129 So.2d 840 (1961) when we stated:
"* * * [W]e must also bear in mind the general rule which holds that taxation laws must be liberally interpreted in favor of the taxpayer and strictly construed against the levying authority with any doubt or ambiguity therein being resolved and construed in favor of the taxpayer. * * *"
For the above and foregoing reasons the judgment of the district court is affirmed at defendant's costs.
Affirmed.
NOTES
[1] Colonial Pipeline Co. v. Mouton, Collector of Revenue, 208 So.2d 323.
[2] Which Colonial is paying.
[3] Which Colonial is paying.
[4] Which Colonial is paying.
[5] Mississippi Code, Sections 9313 and 9314.