275 So.2d 834 (1973)
COLONIAL PIPELINE COMPANY, Plaintiff-Appellee,
v.
E. Lee AGERTON, Collector of Revenue, Defendant-Appellant.
No. 9231.
Court of Appeal of Louisiana, First Circuit.
February 28, 1973.
Rehearing Denied April 9, 1973.
*835 R. Gordon Kean, Sanders, Miller, Downing & Kean, Baton Rouge, for plaintiff-appellee.
Whit M. Cook, II, Baton Rouge, for Collector of Revenue defendant-appellant.
Before SARTAIN, BLANCHE and WATSON, JJ.
SARTAIN, Judge.
This litigation involves the application of R.S. 47:601 (Franchise Tax) as amended by Act No. 325 of 1970.
The issues presented herein are identical to those presented in Colonial Pipeline Company v. Mouton, La.App., 228 So.2d 718 (1969), writs refused 255 La. 474, 231 So.2d 393.
The Collector of Revenue of the State of Louisiana (Collector) levied a "tax" on the plaintiff pursuant to the 1970 amendment. Colonial Pipeline Company (Colonial) paid the taxes under protest and instituted this action to recover the same.
The trial judge held that there was little, if any, difference between R.S. 47:601 (Act 437 of 1958) and the statute after its amendment. We affirm.
R.S. 47:601, as amended by Act 437 of 1958, read as follows:
"§ 601. Imposition of tax
"Every domestic corporation and every foreign corporation, exercising its charter, authorized to do or doing business in this state, or owning or using any part of all of its capital or plant in this state, subject to compliance with all other provisions of law, except as otherwise provided for in this chapter, shall pay a tax at the rate of one dollar and 50/100 ($1.50) for each one thousand dollars ($1,000.00), or major fraction thereof on the amount of its capital stock, surplus, undivided profits, and borrowed capital, determined as hereinafter provided; the minimum tax shall not be less than ten dollars ($10.00) in any case. The tax levied herein is due and payable for the privilege of carrying on or doing business, the exercising of its charter or the continuance of its charter within this state, or owning or using any part or all of its capital or plant in this state."
The same section as amended by Act 325 of 1970 now reads:
"§ 601. Imposition of tax
"Every domestic corporation and every foreign corporation, exercising its charter, or qualified to do business or actually doing business in this state, or owning or using any part or all of its capital, plant or any other property in this state, subject to compliance with all other provisions of law, except as otherwise provided for in this Chapter shall pay an annual tax at the rate of $1.50 for each $1,000.00, or major fraction thereof on the amount of its capital stock, surplus, undivided profits, and borrowed capital, determined as hereinafter provided; the minimum tax shall not be less than $10.00 per year in any case. The tax levied herein is due and payable on any one or all of the following alternative incidents:
(1) The qualification to carry on or do business in this state or the actual doing of business within this state in a corporate form. The term "doing business" as used herein shall mean and include each and every act, power, right, privilege, or immunity exercised or enjoyed in this state, as an incident to or *836 by virtue of the powers and privileges acquired by the nature of such organizations, as well as, the buying, selling or procuring of services or property.
(2) The exercising of a corporation's charter or the continuance of its charter within this state.
(3) The owning or using any part or all of its capital, plant or other property in this state in a corporate capacity.
It being the purpose of this section to require the payment of this tax to the State of Louisiana by domestic corporations for the right granted by the laws of this state to exist as such an organization, and by both domestic and foreign corporations for the enjoyment, under the protection of the laws of this state, of the powers, rights, privileges and immunities derived by reason of the corporate form of existence and operation. The tax hereby imposed shall be in addition to all other taxes levied by any other statute. (Emphasis ours)
"As used herein the term `domestic corporation' shall mean and include all corporations, joint stock companies or associations, or other business organizations organized under the laws of this state which have privileges, powers, rights or immunities not possessed by individuals or partnerships. The term `foreign corporation' shall mean and include all such business organizations as hereinbefore described in this paragraph which are organized under the laws of any other state, territory or district, or foreign country."
It was stipulated that Colonial's operations in the State of Louisiana have not changed since the first Colonial case.
The Collector argues that significant changes were made in the operating incidents of the statute. Further, that the alternative incidents (Sections 1 thru 3) are sufficient to support a valid application of the franchise tax upon Colonial.
In his written reasons for judgment the trial judge held, inter alia, that the three incidences in themselves are not sufficient and quoted Colonial Pipeline v. Mouton, La.App., 228 So.2d 718, 722, as follows:
"This question has never been squarely presented to an appellate court of this state, to our knowledge, on any prior occasion. However, we are of the opinion that these privileges are not of a sufficient local nature as to subject Colonial to a franchise tax. The privileges above enunciated are incidental to and in the furtherance of Colonial's primary object of transporting petroleum products in interstate commerce. The mere qualification to do business does not, per se, subject Colonial to the subject tax."
The major difference that we find in R. S. 47:601 is the removal of the statement "privilege to do business" and the addition of the "corporate form" incident. We believe this to be a distinction without a difference.
In the first Colonial case we made a comprehensive analysis of the cases involving the imposition of a franchise tax upon companies engaged in interstate commerce. First, we recognized that Congress has the exclusive power under the Commerce Clause to regulate interstate commerce and even where the Congress has failed to act on the subject in the area of taxation, the Commerce Clause requires that interstate commerce be free from any direct restrictions or impositions by the state. The clause itself is a limitation upon the power of the states by prohibiting any interference by the states.
We recognize that not all taxes are invalid. A state may require the payment of ad valorem taxes, a use tax, and a properly apportioned income tax. It is conceded that Colonial is paying these taxes to the State of Louisiana. In the first Colonial suit, we stated: (228 So.2d 718, 720)
*837 "[5, 6] However, in the area of franchise or excise taxes imposed by a state on a corporation engaged in interstate commerce, as a general rule, is invalid if the tax is on the `privilege' of doing business. On the other hand, the tax is valid if it is determined that it is a tax on `local activities' or an `in lieu' tax. In Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265, the court held that it is a question of law and fact and that the task of scrutinizing is the task of drawing lines and placing the facts on the proper side of the line which in turn dictate the categorization of the statute and place it in its proper niche, i. e., valid or invalid. The decisive issue in cases of this type turns on the operating incidence of the tax. General Motors Corporation v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430."
It is apparent to us that we are again talking about a "corporate franchise tax" and the question posed for resolution is whether or not the operating incidents enumerated in the statute are sufficient to permit its imposition. We must conclude that they are not. Significantly, the statute as amended still contains the essential taxable incidents as it did before the amendment. More importantly, it is imposed "in addition to all other taxes levied by any other statute".
It can be readily seen that if each state in which a foreign corporation, engaged exclusively in interstate commerce, could impose a franchise tax based on that corporation's total capital stock, surplus, undivided profits, and borrowed capital, the tax burden would be such as to literally prevent the corporation's interstate operation. It is for this basic reason that the Commerce Clause has been invoked to prevent such taxation. The exceptions are very carefully defined and are solely upon "local incidents" or what has been classified as "in lieu tax".
Counsel for the Collector cites several authorities which he contends sanction imposition of the tax herein considered. He principally relies on Memphis Natural Gas Co. v. Stone, 335 U.S. 80, 68 S.Ct. 1475, 92 L.Ed. 1832 (1948); Texas Gas Transmission Corporation v. Atkins, 197 Tenn. 123, 270 S.W.2d 384 (1954); Mid-Valley Pipeline v. King, 221 Tenn. 724, 431 S.W.2d 277 (1968); Great Lakes Pipeline v. Oklahoma Tax Commission, 204 Okl. 518, 231 P.2d 675 (1951); and Roadway Express, Inc. v. Director, Division of Tax, 50 N.J. 471, 236 A.2d 577.
In Memphis Natural Gas Company, Mississippi Code, Sections 9313 and 9314 specifically assessed a tax upon the "capital used, invested or employed . . . within this state, . . .". Our R.S. 47:601 imposes a tax upon the total corporate structure of Colonial. In Texas Gas Transmission Corporation, the Tennessee tax there under consideration was on the "net earnings for the next preceding year, from business done in Tennessee." In Mid-Valley Pipeline, the Supreme Court of Tennessee properly recognized that its tax was an apportioned excise tax on corporate earnings from business done within the state and that local incidence or activities may be a basis for a franchise tax, provided the local activities can be separated from interstate commerce. Roadway Express, Inc., involved the interpretation of a New Jersey statute imposing a "franchise tax". However, it is noted that the tax there imposed was in lieu of all other state, county or local taxes. The measure of the tax was determined by an allocation formula.
The Collector further argues that in the first Colonial case we limited our decision there to the very narrow issue as to whether R.S. 47:601 then under consideration (Act No. 437 of 1958) levied a tax "squarely upon the privilege of engaging in business in Louisiana". This we concede but we also stated in the first Colonial case that Louisiana could levy a tax in lieu of other taxes, on tangibles or intangibles (good will) or local incidents or local activities. We again adhere to that statement *838 but again the undeniable fact is that the three incidences now urged are nothing more than a rephrasing of the general language contained in R.S. 47:601 prior to its amendment in 1970.
Accordingly, for the above and foregoing reasons, the judgment of the District Court is affirmed. All such costs as authorized by law are assessed against the defendant.
Affirmed.